**STATE of Missouri, ex rel. James BROWN, Appellant,**

v.

**CITY OF O'FALLON, Respondent.**

Nos. 51884, 51885.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 10, 1987.

Motion for Rehearing and/or
Transfer Denied
April 9, 1987.

Application to Transfer Denied
May 19, 1987.

Michael A. Turken, St. Charles, for appellant.

Louis S. Czech, Clayton, for respondent.

PUDLOWSKI, Judge.

The O'Fallon, Missouri Board of Aldermen, [Board], voted seven to one to remove Mayor James Brown from his office. Reviewing the proceedings in accordance with Chapter 536 of the Revised Statutes of Missouri, the Circuit Court of St. Charles County entered judgment affirming the Board's action and dissolving a temporary

restraining order placed upon the Board. After initial appeal to the Supreme Court of Missouri, the Supreme Court remanded the case to this court. On appeal, Brown urges numerous points which can be summarized as follows: 1) Brown was not allowed to prove bias on the part of two members of the board; 2) two members of the board were biased against him; 3) the Board improperly considered evidence of offenses which occurred in Brown's prior term in office; 4) the impeachment was based on violations of ordinances which had been repealed; 5) the city's ordinances conflicted with Missouri statutes and thus, did not apply to Brown; 6) § 79.240 RSMo is unconstitutional; 7) the meetings of the Board leading up to the vote of impeachment violated § 610.025 RSMo (The Open Meetings Act); 8) several procedural irregularities occurred in the impeachment process; 9) the Board failed to enter findings of fact and that the impeachment was not supported by substantial and competent evidence. Additionally, Brown contends that the trial court erred in regard to dissolving a temporary restraining order forbidding the Board of Aldermen to issue a Resolution of Censure to Brown. We reverse and remand on the first ground.

James Brown was inaugurated Mayor of O'Fallon on April 19, 1983 and started his second term on April 16, 1985. On September 5, 1985, the Board passed a Resolution of Censure directed at Brown. Brown, in turn, on February 18, 1986 obtained a temporary restraining order against the Board to prevent them from implementing the resolution. Board adopted a Resolution of Impeachment on February 6, 1986. On February 19, 1986 a Board of Impeachment conducted a hearing, after which it voted to remove Brown.

At the beginning of the hearing, Brown filed a Motion for Disqualification of two members of the Board, Alderman Edward Griesenauer, who as President of the Board presided over the impeachment hearing and who subsequently became acting mayor, and Alderman Jerry Davis. Brown attempted to develop a record by questioning the two challenged aldermen on several issues. This motion was denied. While neither the Board nor its presiding officer articulated a reason for this denial, from the argument between Brown's attorney and the city attorney, it appears that they relied on the fact that Brown had subpoenaed the two challenged aldermen and they believed that Brown could make an inquiry later. On cross examination of Alderman Davis, who testified during the impeachment proponent's case in chief, and on direct examination of Alderman Griesenauer during Brown's case in chief, Brown's counsel inquired as to the issues of bias. Neither alderman was disqualified. On March 6, 1986, the Board issued its findings of fact and conclusions of law. While not expressly discussing the alleged bias of Aldermen Davis and Griesenauer, the conclusions of law did state "[t]hat all members of the Board of Aldermen were qualified to sit in the Board of Impeachment, since they are empowered to do so by RSMo 79.240, and by the 'rule of necessity' they are the only body which can hear an impeachment." The Board made no finding of fact as to whether either or both of the aldermen were biased and should have been disqualified.

■ Our review of the impeachment proceedings in this case is governed by Chapter 536 of the Revised Statutes of Missouri, the Missouri Administrative Procedure Act. *State ex rel Powell v. Wallace,* 718 S.W.2d 545, 547 (Mo.App.1986). This review includes a determination of whether the Board's action "is in violation of constitutional provisions." RSMo 536.140.2(1) (1978). This requires that the proceeding be conducted by an impartial tribunal, free of bias, hostility and prejudgment. *Jones v. State Dept. of Public Health and Welfare,* 354 S.W.2d 37, 40 (Mo.App.1962).

RSMo 536.063(3) (1978) states that "[r]easonable opportunity shall be given for the preparation and presentation of evidence bearing on any issue raised." The precise questions before us, then, is whether the

Board gave Brown a reasonable opportunity to present evidence on the issue of bias. As noted above, at the beginning of the hearing, Brown presented two motions of disqualification and requested an opportunity to make a record by questioning the two aldermen. The Board summarily denied these motions.

■ Respondents go to great length to demonstrate to us that Griesenauer and Davis were not infected with a fatal dose of bias. This is not the issue before us. Respondents attempt to redeem their grevious breach of due process by informing us that near the end of the hearing, they allowed Brown to cross-examine Davis after he testified against Brown. They also note that Brown called Griesenauer in his case in chief. The flaw in this reasoning is that Brown's opportunity to present evidence bearing on the issue of bias was not reasonable. The Federal Administrative Procedure Act requires that upon the good faith filing of a timely and sufficient affidavit of personal bias, "the agency shall determine the matter as a part of the record." 5 U.S.C. § 556(b) [1] We believe that the import of this federal law is equally valid for Missouri. That is, upon the receipt of a good faith motion, the tribunal must determine whether bias exists and the challenged member should be disqualified. The reason for this is obvious. The participation of a biased member infects the entire panel. While the case is being heard and described, his influence is substantial. Further, we note that the unchallenged members may be extremely reluctant to remove the taint later if this means that the time and effort invested in hearing will be wasted. This method of determining bias was implicitly approved by our brethren in the Western District in *In re Weston Benefit Assessment Special Road District,*

294 S.W.2d 353 (Mo.App.1956). There, the court recited the facts, specifically noting that the challenge to one of the members of the county court (now county commission) was presented immediately after the matter was called for hearing. After due deliberation and discussion, the county court denied the motion. If the precise positioning of the challenge were immaterial, there would have been no need for the court to recite in detail the procedural maneuvers. *Id.* at 354. For these reasons, we hold that the Board committed error in refusing Brown his right to a timely determination of the issue of bias and we reverse and remand.[2]

Respondents, however, urge us to consider the rule of necessity which would allow an otherwise biased tribunal to still adjudicate the matter. It is true that where the law provides for only one instrumentality with power to hear the case disqualifications will not be allowed to destroy it. *Powell* at 548. Here, however, the disqualification would not have destroyed the Board's ability to decide.

■ O'Fallon is a fourth class city organized under Chapter 79 of the Revised Statutes of Missouri. Its Board of Aldermen consists of eight members, all who voted at the hearing. RSMo 79.240 (1978) allows the removal of the mayor "by a two-thirds vote of all members elected to the board of alderman." As there are eight members elected, this would require six yes votes. Had the board disqualified either Davis or Griesenauer or both, it still would have been fundamentally capable of impeachment because the possibility of a six to zero vote remained. If we assume that Davis and Griesenauer had been disqualified and that Brown's lone supporter would have still voted against impeachment, thereby

---

**1.** Respondents may quibble with whether or not Brown filed an affidavit, but the Missouri Administrative Procedure Act makes no requirement on the particular form of such motions.

**2.** This is not to say that an administrative tribunal must consider motions to disqualify which are not timely. Here there is no doubt that

Brown's motion was timely. Nor do we hold that a frivolous or tenuous motion to disqualify must be heard. Again, the allegation of financial interest and prejudgment raised here are serious enough to be heard, even if it is later decided they were not enough to compel disqualification.

preventing the obtaining of six votes, that would not change our holding. That the result would have been different is not be sufficient to invoke the Rule of Necessity. 1 Am Jur2d § 66 (1962).

■ It is argued, that even with disqualification a five to one vote for impeachment still meets the statutory requirements and the failure to remove Davis and Griesenauer was harmless error. This is incorrect for two reasons. First, similar legislation requiring a "two-thirds vote" of all the members has been held to include the votes non-participating members. *Braddy v. Zych*, 702 S.W.2d 491, 493–494 (Mo.App. 1985). More importantly, Missouri law holds that if the biased member "participates in the hearing and determination, it makes the decision void or at least voidable ... even though his presence was not required to constitute a quorum or a majority of the board could have acted legally without him." *Weston* at 356–357. There, the court found one member of a three member tribunal to be biased and that he should have been disqualified. It was irrelevant that the particular adjudication passed three to zero and that, without the biased members participation, the vote, now two to zero, would have been sufficient. As the court noted "[w]e think this rule is sound because the participation of the disqualified member in the proceeding may have influenced the opinion of the other members." *Id.* at 357. Therefore, if the vote by the Board had been eight-zero, the failure to disqualify either Griesenauer and/or Davis would still require reversing and remanding.[3]

Brown and the Board also disagree as to whether acts committed in a previous term can be used as a basis for impeachment. Both parties cite us to *State ex inf. Danforth v. Orton*, 465 S.W.2d 618 (Mo. banc 1971) and *Eagleton v. Murphy*, 348 Mo. 949, 156 S.W.2d 683 (1941) which discussed, but did not give a holding, on that issue.

Rather, the court noted that it "turns on whether reelection to the same office indicates continuous service rather than a new officer." *Id.* at 684. As can be expected, both parties use the various phrases in those opinions to urge their conclusion to us. It would be dictum for us to hazard an opinion on this issue, but we do note that the issue of acts in a previous term is not squarely before us. Here, there is evidence of acts that occurred in Brown's current term. Therefore, before ever reaching the issues of acts in a prior term this court would have to find that each impeachable offense from the current term could not withstand review. If only one charge stood, the court would have no need to address the otherwise redundant charges from the previous term. *Orton* at 620–621.

The decision of the Board is reversed and remanded. Mayor James Brown is ordered returned to office. If after remand it is decided to proceed with a new impeachment hearing, the Board will conduct its proceedings in accordance with this opinion.

CRANDALL and KAROHL, JJ., concur.

---

**3.** Because of the narrow grounds on which we hold, we wish to underscore the fact that we venture no opinion as to whether, at the rehearing, Davis and Griesenauer ought to be disqualified.