**James BROWN, Appellee,**

v.

**Edward GRIESENAUER, Jerry Davis, David London, Kenneth Molloy, Karl Duncan, Theodore Boller, Marvin Coval, Appellants.**

**No. 90–1805.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1990.

Decided July 13, 1992.

---

Joy R. Urbom, St. Louis, Mo., argued, for appellants.

Steven Hamburg, St. Louis, Mo., argued, for appellee.

Before McMILLIAN and BEAM, Circuit Judges, and ROSENBAUM,* District Judge.

McMILLIAN, Circuit Judge.

Defendants Edward Griesenauer, Jerry Davis, David London, Kenneth Molloy, Karl Duncan, Theodore Boller, and Marvin Coval appeal from an order entered in the United States District Court for the Eastern District of Missouri denying their motion to dismiss a civil rights complaint on the ground of absolute immunity. *Brown v. Griesenauer*, No. 88–0601C(6) (Apr. 9, 1990) (order) (*Brown*). For reversal, defendants argue that they are entitled to absolute immunity from damages liability for actions undertaken as members of a municipal board of impeachment. For the reasons discussed below, we reverse and remand the case to the district court with directions to dismiss the complaint.

In April 1983 plaintiff James Brown was inaugurated mayor of the City of O'Fallon, Missouri. He began his second term as mayor in April 1985. Defendants were members of the city's board of aldermen. The board of aldermen has a total of eight members. For reasons that are not apparent from the record, relations between Brown and the board of aldermen deteriorated, and in September 1985 the board

of aldermen passed a resolution of censure against Brown. Brown went to state trial court and obtained a temporary restraining order prohibiting the board of aldermen from implementing the resolution of censure. Relations between Brown and the board of aldermen worsened, and in February 1986 the board of aldermen passed a resolution of impeachment against Brown. Pursuant to Mo.Rev.Stat. § 79.240,[1] the board of aldermen conducted impeachment proceedings, which included a hearing. At the beginning of the impeachment proceedings, Brown had filed a motion to disqualify two members of the board of aldermen for bias. The board of aldermen denied the motion to disqualify, voted to impeach Brown (the vote was seven to one) and issued written findings of facts and conclusions of law.

Brown then filed an action for review of the impeachment proceedings in state trial court. He alleged that there were numerous procedural improprieties in the impeachment proceedings. The state trial court affirmed the impeachment decision and dissolved the temporary restraining order. After an initial appeal to the state supreme court, the state supreme court remanded the case to the state court of appeals. The state court of appeals reversed the impeachment decision on the ground that Brown had not been afforded a reasonable opportunity to present evidence of bias on the part of two members of the board of aldermen, ordered Brown returned to office and remanded the case to the state trial court for further proceedings. *State ex rel. Brown v. City of O'Fallon*, 728 S.W.2d 595, 596–98 (Mo.Ct. App.1987).

Brown then filed this 42 U.S.C. § 1983 action against defendants (the seven aldermen who voted against him), in their individual capacities only, for voting to impeach him and sought compensatory and

---

* The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota, sitting by designation.

1. The City of O'Fallon is a fourth class city. Mo.Rev.Stat. § 79.240 authorizes the impeachment of mayors of fourth class cities and pro-

vides in part that "[a]ny elective officer, including the mayor, may in like manner, for cause shown, be removed from office by a two-thirds vote of all members elected to the board of aldermen, independently of the mayor's approval or recommendation."

punitive damages and attorney's fees and costs. Brown alleged that the impeachment proceedings violated his federal constitutional rights and also violated certain state laws. Defendants filed a motion to dismiss on the grounds of failure to state a claim and absolute immunity from personal liability for damages. The district court concluded that, construed liberally, the complaint stated a claim for deprivation of procedural due process, that is, the right to an impartial tribunal. *Brown*, slip op. at 3 (concluding that Brown possessed a protectible property interest in continued employment as mayor because, under applicable state law, elective officers can only be removed "for cause shown").

With respect to the claim of absolute immunity from damages liability, defendants argued that they were entitled to absolute immunity because they acted in a judicial capacity when they sat as a municipal board of impeachment. The district court applied the functional analysis test from *Cleavinger v. Saxner*, 474 U.S. 193, 202, 106 S.Ct. 496, 501, 88 L.Ed.2d 507 (1985) (*Cleavinger*), and *Butz v. Economou*, 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978) (*Butz*), and decided that defendants were not entitled to absolute immunity because, as elected officials, they were not insulated from political influence. *Brown*, slip op. at 5, *citing Williams v. City of Montgomery*, 742 F.2d 586, 589 (11th Cir.1984) (per curiam) (appointed personnel hearing examiners held not entitled to absolute immunity), *cert. denied*, 470 U.S. 1053, 105 S.Ct. 1756, 84 L.Ed.2d 819 (1985). The district court then directed the parties to brief the defense of qualified immunity as a motion for summary judgment. This interlocutory appeal followed.

■ As a preliminary matter, we hold that we have jurisdiction over this interlocutory appeal under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93

L.Ed. 1528 (1949). *See Nixon v. Fitzgerald*, 457 U.S. 731, 742–43, 102 S.Ct. 2690, 2697–98, 73 L.Ed.2d 349 (1982) (order denying claim of absolute immunity held appealable as collateral order); *Evans v. Dillahunty*, 711 F.2d 828, 829–30 (8th Cir.1983) (absolute or qualified immunity claimed by state parole official and prosecutor). The order in the present case is a collateral order: it conclusively determined the disputed claim of absolute immunity, which is an important issue that is completely separate from the merits of the underlying action and one that is effectively unreviewable on appeal from a final judgment, and presented a serious and unsettled question. *See Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); *Nixon v. Fitzgerald*, 457 U.S. at 742, 102 S.Ct. at 2697.

■ We review the district court's denial of absolute immunity de novo. The essential facts necessary to resolve the claim of absolute immunity in the present case are not in dispute, and whether defendants are entitled to absolute immunity from damages liability[2] is solely a question of law. *Evans v. Dillahunty*, 711 F.2d at 829; *cf. Hudgins v. City of Ashburn*, 890 F.2d 396, 403 (11th Cir.1989) (qualified immunity). Although "federal, not state, law determines the adequacy of defenses asserted in civil rights actions brought pursuant to 42 U.S.C. § 1983[,] ... a court may consider relevant state law in determining the appropriate federal immunities standard to apply." *Jodeco, Inc. v. Hann*, 674 F.Supp. 488, 497 (D.N.J.1987).

For reversal, defendants argue that they acted essentially in a judicial capacity when they sat as a municipal board of impeachment and are therefore entitled to absolute immunity from damages liability. Defendants specifically argue the district court misapplied the political influence factor. They argue that elective status alone does not preclude absolute immunity from dam-

---

2. We note that Brown did not sue defendants in their official capacities for declaratory or injunctive relief. *See Supreme Court v. Consumers Union of United States, Inc.*, 446 U.S. 719, 735 & n. 13, 100 S.Ct. 1967, 1976 & n. 13, 64 L.Ed.2d 641 (1980) (Supreme Court has never held that judicial immunity absolutely insulates judges from declaratory or injunctive relief with respect to their judicial acts; citing positions of circuit courts of appeals).

ages liability and cite state judges and prosecutors as examples of elected government officials who are nonetheless protected by absolute immunity from damages liability for their judicial or prosecutorial acts. Defendants also argue the district court's analysis was too narrowly focused on the political influence factor and that the other *Cleavinger–Butz* factors indicated that they acted in a judicial capacity when sitting as a municipal board of impeachment. In the alternative, defendants argue that they are entitled to absolute immunity from damages liability because impeachment is a legislative act. Under state law, the board of aldermen has the power to remove any elected official, including the mayor.

In contrast, Brown argues the district court properly applied the *Cleavinger–Butz* factors. He argues impeachment is an essentially political process in which precedent is not important and in which all the participants are elected politicians and thus are not insulated from political influence. Brown further argues that absolute immunity would not sufficiently increase defendants' ability to act in a forthright manner to warrant the absence of a remedy for intentional or otherwise inexcusable constitutional violations. He argues defendants did not act in either a judicial or legislative capacity when they sat as a municipal board of impeachment, but instead they acted in an administrative or executive capacity. In other words, Brown characterizes impeachment as a specialized kind of personnel decision, for which government officials enjoy only qualified immunity.[3]

For the reasons discussed below, we hold that defendants are entitled to absolute immunity from damages liability.

■■■■ There are two types of immunity from personal liability for damages available to government officials: absolute immunity and qualified immunity. *See Owen*

v. City of Independence, 445 U.S. 622, 637–38, 100 S.Ct. 1398, 1408–09, 63 L.Ed.2d 673 (1980). Judges are entitled to absolute immunity for actions taken in their judicial capacity. *See Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (acts within jurisdiction); *Pierson v. Ray*, 386 U.S. 547, 553–54, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967); *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1872). "Judicial immunity apparently originated, in medieval times, as a device for discouraging collateral attacks and thereby helping to establish appellate procedure as the standard system for correcting judicial error.... [J]udicial immunity also protected judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants." *Forrester v. White*, 484 U.S. 219, 225, 108 S.Ct. 538, 543, 98 L.Ed.2d 555 (1988) (citations omitted); *see Bradley v. Fisher*, 80 U.S. (13 Wall.) at 347 (emphasizing "that independence without which no judiciary can either be respectful or useful"). Prosecutors and other non-judicial officials whose acts are an integral part of the judicial process are also protected by absolute immunity for acts performed in that capacity. *See Briscoe v. LaHue*, 460 U.S. 325, 335, 103 S.Ct. 1108, 1115, 75 L.Ed.2d 96 (1983) (witnesses); *Imbler v. Pachtman*, 424 U.S. 409, 423 n. 20, 424–26, 96 S.Ct. 984, 991 n. 20, 992–93, 47 L.Ed.2d 128 (1976) (grand jurors and prosecutors for prosecutorial acts); *Evans v. Dillahunty*, 711 F.2d at 830–31 (state parole officials).

■■■■ Legislators are also protected by absolute immunity for actions taken in their legislative capacity. *See Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 406, 99 S.Ct. 1171, 1179, 59 L.Ed.2d 401 (1979) (members of regional land planning agency); *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) (members of Con-

---

3. As noted by the Supreme Court in *Cleavinger v. Saxner*, 474 U.S. 193, 206–07, 106 S.Ct. 496, 503–04, 88 L.Ed.2d 507 (1985), *citing Butz v. Economou*, 438 U.S. 478, 507–08, 98 S.Ct. 2894, 2911–12, 57 L.Ed.2d 895 (1978), the protection of qualified immunity is "not of small conse-

quence.... [I]nsubstantial lawsuits can be recognized and be quickly disposed of, and firm application of the Federal Rules of Civil Procedure 'will ensure that [government] officials are not harassed by frivolous lawsuits.'"

gress); *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 613–14 (8th Cir.1980) (municipal legislators). Legislators engaged in legislative activity are protected by absolute immunity "to insure that the legislative function may be performed independently without fear of outside interference." *Supreme Court v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 731, 100 S.Ct. 1967, 1974, 64 L.Ed.2d 641 (1980) (*Consumers Union*). Among executive officials, the President is protected by absolute immunity for all official acts because of the President's "unique position in the constitutional scheme." *Nixon v. Fitzgerald*, 457 U.S. at 749, 102 S.Ct. at 2701. In general, however, most government officials, even very senior government officials who possess considerable responsibility and discretion, are entitled only to qualified immunity. Qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (presidential aides); *see Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806 (cabinet officers); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (senior state officials, including governor).

▪ It is, however, misleading to analyze immunity only in terms of the identity or status of the official or class of officials, for example, judicial immunity or legislative immunity. The Supreme Court has instead developed "a 'functional' approach to immunity law." *Harlow v. Fitzgerald*, 457 U.S. at 810, 102 S.Ct. at 2734 (citation omitted). "Under that approach, we examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Forrester v. White*, 484 U.S. at 224, 108 S.Ct. at 542. "Absolute immunity flows not from rank or title or 'location within the Government,' but from the nature of the responsibilities of the individual

official." *Cleavinger*, 474 U.S. at 201, 106 S.Ct. at 500 (holding prison disciplinary committee members protected only by qualified immunity), *citing Butz*, 438 U.S. at 511, 98 S.Ct. at 2913 (holding agency hearing examiner or administrative law judge "functionally comparable" to judge and therefore protected by absolute immunity). Whether a government official is entitled to absolute or qualified immunity depends upon the official's function in a particular context or proceeding. *Forrester v. White*, 484 U.S. at 228–29, 108 S.Ct. at 544–45 (judge's firing of probation officer held action taken in administrative capacity, not judicial capacity, and thus not protected by absolute immunity); *Consumers Union*, 446 U.S. at 731, 100 S.Ct. at 1974 (judges acting to promulgate code of conduct for attorneys protected by legislative, not judicial, immunity; judges acting to enforce code properly held liable in their enforcement capacity for declaratory and injunctive relief as well as attorney's fees). "[T]he nature of a proceeding 'depends not upon the character of the body but upon the character of the proceedings.'" *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 477, 103 S.Ct. 1303, 1312, 75 L.Ed.2d 206 (1983) (*Feldman*), (citation omitted). Characterization of the proceeding is a question of federal law for purposes of immunity analysis. *Consumers Union*, 446 U.S. at 731, 100 S.Ct. at 1974; *cf. Feldman*, 460 U.S. at 476–78, 103 S.Ct. at 1311–13 (federal jurisdiction context). "Unfortunately, the various activities of most [government] officials cannot be [easily or definitively] characterized as only administrative, legislative, or judicial." *Haskell v. Washington Township*, 864 F.2d 1266, 1277–78 (6th Cir.1988) (enacting municipal zoning ordinances could be legislative or administrative).

▪ Thus, under the functional approach to immunity law, the critical inquiry is in what capacity the defendants were acting at the time of the allegedly unconstitutional or unlawful conduct. In the present case defendants are local legislators. As discussed above, however, defendants' status as local legislators is not dis-

positive. Moreover, "not all governmental acts by a local legislator, or even a local legislature, are necessarily legislative in nature." *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 580 (9th Cir.1984), *cert. denied*, 471 U.S. 1054, 105 S.Ct. 2115, 85 L.Ed.2d 480 (1985). The act for which Brown seeks to impose damages liability on defendants could be characterized as legislative because defendants acted by voting to impeach. However, "[a]lthough a local legislator may vote on an issue, [the act of voting] alone does not necessarily determine that he or she was acting in a legislative capacity." *Id.; see O'Brien v. City of Greers Ferry*, 873 F.2d 1115, 1119–20 (8th Cir.1989) (city council vote on special appropriation held executive act). *But cf. Espanola Way Corp. v. Meyerson*, 690 F.2d 827, 829 (11th Cir.1982) (act of voting constitutes exercise of legislative decision-making which entitles city council member to absolute immunity because voting is legislative function), *cert. denied*, 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983). Although state law entrusts the board of aldermen with the authority to impeach the mayor, we do not think that impeachment is a truly legislative act; it is instead an act that happens to have been done by legislators. *See Forrester v. White*, 484 U.S. at 227–29, 108 S.Ct. at 544–45 (distinguishing between truly judicial or adjudicative acts and acts performed by judges). The act of voting to impeach the mayor is not a "classic" legislative function such as enacting ordinances or establishing municipal policy. "Legislation … looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power." *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908). The impeachment proceedings and the vote to impeach did not involve the "formulation of policy governing future conduct for all or a class of the citizenry." *O'Brien v. City of Greers Ferry*, 873 F.2d at 1119.

We think the district court correctly characterized defendants' actions as essentially judicial or adjudicatory, rather than legislative. As discussed above, immunity analysis focuses on "the nature of the function performed, not the identity of the actor [or actors] who performed it." *Forrester v. White*, 484 U.S. at 229, 108 S.Ct. at 545. We think impeachment proceedings are essentially judicial or adjudicatory in nature, even though the decision-making body and the form of the proceedings are legislative. "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." *Prentis v. Atlantic Coast Line Co.*, 211 U.S. at 226, 29 S.Ct. at 69. "A declaration on rights as they stand must be sought, not on rights which may arise in the future, and there must be an actual controversy over an issue.... The form of the proceeding is not significant. It is the nature and effect which is controlling." *In re Summers*, 325 U.S. 561, 566–67, 65 S.Ct. 1307, 1310–11, 89 L.Ed. 1795 (1945) (state supreme court's refusal to admit bar applicant held judicial proceeding). Here, the board of aldermen, sitting as a board of impeachment, was required to perform an adjudicatory function in deciding whether there was legal cause to impeach the mayor and, if so, whether to remove the mayor from office. *See Fitzgerald v. City of Maryland Heights*, 796 S.W.2d 52, 56–57 (Mo.Ct.App.1990) (purely political reasons do not constitute requisite legal cause for impeachment; legal cause means misfeasance, malfeasance or nonfeasance). In other words, the board of aldermen, sitting as a board of impeachment, functioned like judges in that they were required to determine whether bias existed, to hear testimony and receive evidence, to evaluate the credibility of witnesses and weigh the evidence, and to make findings of fact and conclusions of law.

This does not conclude our immunity analysis. We must next determine whether the function of the board of aldermen, sitting as a municipal board of impeachment, was a "classic" adjudicatory one so as to justify the protection of absolute immunity as opposed to only qualified immunity.

[T]he Court mentioned the following factors, among others, as characteristic of the judicial process and to be considered in determining absolute as contrasted with qualified immunity: (a) the need to assure that the individual can perform his [or her] functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Cleavinger*, 474 U.S. at 202, 106 S.Ct. at 501, *citing Butz*, 438 U.S. at 512, 98 S.Ct. at 2913. Applying these factors, the district court determined that defendants were not entitled to absolute immunity because, as elected officials, they were not sufficiently insulated from political influence. *Brown*, slip op. at 5.

We acknowledge that "the line between absolute immunity and qualified immunity often is not an easy one to perceive and structure." *Cleavinger*, 474 U.S. at 206, 106 S.Ct. at 503. For example, federal hearing examiners and parole board members are protected by absolute immunity, but prison disciplinary committee members and school board members are protected by only qualified immunity, even though they arguably perform comparable "adjudicatory" functions, albeit in different contexts. *Compare Butz*, 438 U.S. at 513, 98 S.Ct. at 2914, *and Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972), *with Cleavinger*, 474 U.S. at 203, 106 S.Ct. at 501, *and Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). We have considered the *Cleavinger–Butz* factors and conclude that, on balance, the members of a municipal board of impeachment fall on the absolute immunity side of the line for their actions taken in that capacity. First, there is a strong need to assure that the individual board members perform their impeachment function without harassment or intimidation. Impeachment proceedings by their very nature are likely to be extremely controversial and fiercely political; it is in the public interest that individual board members feel free to exercise their judgment in impeachment proceedings without fear of burdensome litigation and potentially ruinous personal liability for damages.

Next, municipal impeachment proceedings in Missouri are subject to extensive procedural safeguards, as set forth in the state administrative procedure act, which reduce the need for a private damages remedy as a means of controlling unconstitutional conduct. Mo.Ann.Stat. ch. 536 (Vernon 1988 & Supp.1992); *see State ex rel. Powell v. Wallace*, 718 S.W.2d 545, 547 (Mo.Ct.App.1986). In this respect, municipal impeachment proceedings in Missouri more closely resemble the federal administrative hearings at issue in *Butz* than the prison disciplinary committee hearings at issue in *Cleavinger*. Under Missouri law, impeachment proceedings are "contested cases" and are adversarial in nature. The parties may be represented by attorneys. Mo.Ann.Stat. § 536.063(4). Notice and a hearing are required, *id.* § 536.070, although the parties can resolve cases informally without a formal hearing. *Id.* § 536.060 (for example, by settlement). The parties may conduct discovery, *id.* § 536.073(1), (2), and subpoena witnesses, *id.* § 536.077. Oral evidence is taken only on oath or affirmation. *Id.* § 536.070(1). The parties may call and cross-examine witnesses. *Id.* § 536.070(2), (3). The proceedings are recorded and preserved, and any interested person can obtain a copy of the transcript. *Id.* § 536.070(4). The parties may present oral argument or written briefs, *id.* § 536.080(1), and every decision must be in writing and include or be accompanied by findings of fact and conclusions of law, *id.* § 536.090, and is subject to judicial review, *id.* § 536.100–.140.

We also think that precedent is important in impeachment proceedings, particularly on judicial review, because Missouri courts have construed "for cause" for purposes of impeachment to mean "legal cause" which "specifically relates to and affects the administration of the office ... and [is] restricted to something of a substantial nature directly affecting the rights

and interests of the public." *McCallister v. Priest,* 422 S.W.2d 650, 657 (Mo.1968) (banc). In addition, the availability of judicial review means that any errors in the impeachment proceedings can be corrected on appeal, thus further reducing the need for a private damages remedy. In fact, in the present case, Brown sought judicial review of the impeachment decision and eventually prevailed on appeal. *State ex rel. Brown v. City of O'Fallon,* 728 S.W.2d at 598 (the court reversed the decision of the board and returned the mayor to office).

As noted by the district court, the individual board members are elected officials and to that extent are not insulated from political influence. However, political or electoral pressure alone cannot deprive government officials of absolute immunity or qualified immunity; after all, legislators are the quintessential elected officials and they enjoy absolute immunity for acts taken in a legislative capacity. Similarly, many state judges are elected and nonetheless enjoy absolute immunity for acts taken in a judicial capacity. We think that, at least for purposes of immunity analysis, the insulation-from-political-influence factor does not refer to the independence of the government official from the political or electoral process, but instead to the independence of the government official as a decision-maker. We think the individual board members as decision-makers in municipal impeachment proceedings are as independent as administrative law judges or as federal or state judges. Unlike the members of the prison disciplinary committee in *Cleavinger* who were prison employees and the direct subordinates of the warden who reviewed their disciplinary decisions, 474 U.S. at 204, 106 S.Ct. at 502, the individual board members are not employees and have no direct supervisors. They are certainly not subordinate to the state judges who review the impeachment decision, and they are under no institutional pressure to resolve the dispute in any particular way. Individual board members are admittedly not "professional hearing officers" like administrative law judges, state judges or parole board members.

Nonetheless, as adjudicators in impeachment proceedings, they must be fair and impartial. *See Fitzgerald v. City of Maryland Heights,* 796 S.W.2d at 59.

In sum, we hold that defendants acted in a judicial capacity in voting to impeach the mayor and that their function as a board of impeachment was sufficiently comparable to "classic" adjudication so as to justify absolute immunity from personal liability for damages.

Accordingly, we reverse the order of the district court and remand the case to the district court with directions to dismiss the complaint.

BEAM, Circuit Judge, concurring and concurring specially.

I agree with Judge McMillian's thorough and scholarly analysis of absolute immunity and concur in his opinion. I think, additionally, that Brown's complaint suffers from a more fundamental defect. He simply does not state a claim for relief that can be granted under 42 U.S.C. § 1983. I recognize that it is frequently more expeditious to reach the question of immunity than to analyze the quality of the claim asserted. Perhaps this is such a case. Here, however, the path followed clearly demonstrates that more due process was given Brown under Missouri law than was required by the Constitution.