**REDWOOD VILLAGE PARTNERSHIP, an Illinois Partnership, Plaintiff,**

v.

**John GRAHAM, Blaine Nordwall, Robert Wanner, Barb Howe, Don Johnson, and Charles Ehrhardt, in their individual capacity, Defendants.**

Civ. No. A1–91–108.

United States District Court,
D. North Dakota,
Southwestern Division.

April 27, 1993.

---

LaRoy Baird III, Bismarck, ND, Erwin Chemerinsky, Los Angeles, CA, for plaintiff.

Charles S. Miller, Fleck, Mather, Strutz & Mayer PC, Michele Johnson, Asst. Atty. Gen., Bismarck, ND, for defendants.

## MEMORANDUM AND ORDER

BENSON, Senior District Judge.

Redwood Village Partnership (plaintiff) brought this 42 U.S.C. § 1983 action against John Graham, Blaine Nordwall, Robert Wanner, Barb Howe, Don Johnson, and Charles Ehrhardt (defendants) to recover monetary damages for the alleged violation of plaintiff's civil rights.

Defendants filed a Rule 56, Federal Rules of Civil Procedure motion for summary judgment. Thereafter plaintiff filed a motion for summary judgment for the relief pleaded in its Complaint. Plaintiff's motion is denied.

■ Summary Judgment is available to a party when a review of the pleadings and other documents filed indicate there exists no genuine issue of material fact and a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56, *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A Court considering a motion for summary judgment must view the evidence in a light most favorable to the non-moving party. The non-moving party is entitled to all reasonable inferences that can be drawn from the evidence. *Vacca v. Viacom Broadcasting of Missouri, Inc.,* 875 F.2d 1337, 1339 (8th Cir.1989). For purposes of this opinion, the plaintiff will be considered to be the non-moving party.

### FACTUAL BACKGROUND

Redwood Village is a partnership organized under the laws of Illinois. The partnership was formed to acquire and operate Redwood Village, a basic care home for the elderly and infirm located in Wilton, North Dakota, which it purchased on December 31, 1984.

The course of events that has culminated in the current law suit has been recited by the North Dakota Supreme Court in *Redwood Village v. N.D. Dept. of Human S.,* 420 N.W.2d 333 (N.D.1988). Plaintiff, as the owner of Redwood Village was entitled to a per patient reimbursement of allowable operating expenses for public pay residents. The amount of reimbursement was calculated by the North Dakota Department of Human Services.

Reimbursable expenses included an allocation for the recoupment of depreciation and of interest expense incurred by the owner in

the acquisition of the facility. The controversy in this case had its genesis in the inability of the parties to agree on the amount of reimbursement for interest expenses and depreciation.

Administrative proceedings were instituted by the plaintiff for the purpose of rectifying what the plaintiff felt was an inequitable reimbursement rate. According to Redwood Village, the practical effect of the culmination of this quest for a proper reimbursement rate was the decision by the North Dakota Supreme Court in favor of Redwood Village.

Redwood Village alleges the response of the North Dakota Department of Human Services to this unfavorable court decision was the promulgation of retroactive administrative rules designed specifically to circumvent the North Dakota Supreme Court decision and to penalize Redwood Village. Defendants in this case were at all times relevant to this controversy, employed by the North Dakota Department of Human Services.

## DISCUSSION

Plaintiffs describe the role of each of the defendants in this case as:

> All defendants at all times reference in this complaint were acting and operating within the scope of their employment and under the authority and color of the laws, statutes and administrative rules of the State of North Dakota. The defendants in their capacities as employees of the Department of Human Services and the State of North Dakota are charged with the responsibility of licensing and regulating the operation of basic care homes for the aged and infirm in the State of North Dakota, such as Redwood Village.[1]

Plaintiff's Amended Complaint (Doc. # 21) at 2.

 Absolute immunity is a complete shield for defendants sued pursuant to 42 U.S.C. § 1983. Qualified immunity affords defendants immunity from suit if their conduct was objectively reasonable. *See Owen*

*v. City of Independence,* 445 U.S. 622, 637–38, 100 S.Ct. 1398, 1408–09, 63 L.Ed.2d 673 (1980). In this case, defendants seek summary judgment dismissal based on a claim that absolute legislative immunity, or, in the alternative, qualified immunity, shields them from suit. The court has considered the claims of the defendants and the plaintiff's response thereto, and concludes defendants are entitled to summary judgment dismissal based on absolute legislative immunity.

 The concept of absolute legislative immunity has long been recognized. *See Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) (recognizing the preservation of a legislator's privilege, in both state and federal government, to be free to do and say as they might in the implementation of legislation). The purpose behind it is to afford legislators immunity "from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good." *Id.* at 377, 71 S.Ct. at 788. The application of the privilege does not involve consideration of whether the actor had an improper purpose in conducting the legislative function in question. *Id.*

In considering whether a particular official or officials are entitled to absolute immunity, the Supreme Court has mandated a "functional approach". *Harlow v. Fitzgerald,* 457 U.S. 800, 810, 102 S.Ct. 2727, 2734, 73 L.Ed.2d 396 (1982). Under this approach, courts must examine "the nature of the functions with which a particular official or class of officials have been lawfully entrusted, and [then] seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Forrester v. White,* 484 U.S. 219, 224, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1987). "Thus, under the functional approach to immunity law, the critical inquiry is in what capacity the defendants were acting at the time of the allegedly unconstitutional or unlawful conduct." *Brown v. Griesenauer,* 970 F.2d 431, 436 (8th Cir.1992). Therefore, it does not matter that the actor's office is in the executive, judicial or legisla-

---

1. Defendant Blaine Nordwall was described as being an Assistant Attorney General of the State of North Dakota and the Chief Legal Counsel of the North Dakota Department of Human Services.

tive branch of government; if the act is legislative in nature, absolute immunity may be appropriate. *Id.* The next step in the analysis necessarily requires an evaluation of the capacity in which the defendants were acting when they engaged in the complained of conduct.

■ The conduct of defendants that plaintiff alleges deprived it of its constitutional rights involved the actions of defendant employees of the North Dakota Department of Human Services in promulgating administrative rules through the formal rule making procedure. The new rules provided that with respect to facilities acquired after July 18, 1984, the State, in setting the reimbursement rate, would consider the basis for depreciation to be the seller's cost of the facility as of July 18, 1984, rather than the purchaser's cost to acquire the facility. A similar rule was promulgated with respect to allowable interest expense. The new rules also enabled the State to recapture the depreciation expense back to June 1, 1984, in the event a facility was sold in the future. The State claims its purpose in promulgating the new rules "was to conform the basic care rules to the existing and more comprehensive rate setting rules for nursing homes." Defendant's Brief in Support of Motion for Summary Judgment (Doc. # 26) at 8. Also cited as a reason for the new rules was the need "to tighten up the existing rules in terms of cost control." *Id.* Thus, from the date the new rules went into effect a change had been made affecting the future per-patient rate that facilities transferred after July 18, 1984, were entitled to receive from the State. These new rules affect the *future* per-patient rate of all facilities transferred after July 18, 1984, but did not become effective until July 1, 1989. The transfer of the facility by the plaintiff herein was consummated prior to July 1, 1989.

The North Dakota Department of Human Services is an administrative agency of the executive branch of the state government of North Dakota. *See* N.D.Cent.Code § 28–32–01 (1991) (definitions). Pursuant to N.D.Cent.Code § 28–32–02, the Department

is authorized, and required, to establish rules. Pursuant to this section, the Code requires opportunity for public input into the rule making process. *See* N.D.Cent. Code § 28–32–02(3) (1991) (agency must conduct oral hearing and make a written record detailing its consideration of any written and oral submissions received). Notice of public hearing, scheduled for November 18, 1988 at the State Capital in Bismarck, North Dakota, was published in the *Bismarck Tribune, Devils Lake Daily Journal, Dickinson Press, Williston Daily Herald, Grand Forks Herald, Jamestown Sun* and the *Minot Daily News.* The published notice invited interested members of the public to attend the hearing and discuss the Department's proposed rule changes or, in the alternative, the public was invited to send written comments to the Department. It appears a copy of the proposed rules was sent to the operator of every home for the aged and infirm in the state of North Dakota prior to the meeting. The Department received written comments from nine commentators, two of whom made oral presentations at the public hearing.[2] The Department issued a written statement wherein it outlined the comments it had received and described its reaction to the issues addressed in the comments. The proposed rules were then sent to the Attorney General's office for review. They were approved by the Attorney General and pursuant to the requirements of N.D.Cent.Code § 28–32–03 (1991), the rules were adopted, published in the North Dakota Administrative Code, and given the force and effect of law.

The conduct at question resulted in promulgated revised rules that apply to everybody. *See Griesenauer,* 970 F.2d at 437 ("Legislation ... looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power."); *See also Bateson v. Geisse,* 857 F.2d 1300, 1304 (9th Cir.1988) (describing legislative acts as those which apply to everybody, while acts that apply to a single person or group are categorized as executive). The plaintiff alleges the rules were designed to harm it specifically, but the court notes the rules do not single

**2.** Gregory Cleveland, General Partner of Redwood Village submitted a written response to the proposed rule changes in which he addressed his concerns relating thereto.

out the plaintiff or in any way suggest they are to be applied only against the plaintiff. That provisions of the new rules may only have affected plaintiff does not change the nature of the defendants' conduct from legislative to executive. The conduct of the defendants in adopting the new rules is, in the court's view, classically legislative.

The same rationale that traditionally supports the grant of absolute immunity to "legislators" likewise mandates the grant of such immunity to those executive branch individuals who in substance, are performing a legislative function. The conduct of the defendants in formulating the rules in this case is best described as legislative.[3] The purpose behind affording absolute legislative immunity is to ensure that individuals charged with implementing legislation may perform this vital function and be absolved from a threat of retribution in the form of law suits brought by those adversely affected by the rules. The court concludes absolute legislative immunity in this case is consistent with the rationale of the Supreme Court where such immunity has been granted.[4]

**IT IS ORDERED:**

1) Plaintiff's motion (Doc. # 38) for summary judgment is without merit and is denied. It's complaint is dismissed.

2) Defendants' motion (Doc. # 26) for summary judgment is granted. Judgment shall be entered accordingly.

**3.** In *Lake Country Estates v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1978), the Supreme Court granted absolute legislative immunity to a Regional Planning Agency, consisting in part of non-elected individuals appointed jointly by the State of California and Nevada. *Id.* at 406, 99 S.Ct. at 1179. This court views the instant case and that as existed in *Lake Country* to be similar.

**4.** In *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), the U.S. Supreme Court granted the Virginia Supreme Court absolute legislative immunity for its conduct in promulgating the Virginia Code of Professional Responsibility. The Court noted that had the state legislature enacted the same code, which it could have, that body would likely have prevailed on the basis of abso-

lute legislative immunity. *Id.* at 733–34, 100 S.Ct. at 1974–76. In the instant case, the North Dakota State Legislature could have legislated the rules that were promulgated by the Department of Human Services.

The court also notes the situation in this case is similar to that in *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). In *Butz*, the Court granted absolute judicial immunity to executive branch officials engaged as administrative hearing officers. *Id.* In doing so, the Court stated, "We think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages." *Id.* at 512–13, 98 S.Ct. at 2914.