**Robert V. KRUEGER, Jr., Appellee,**

v.

**Richard E. LYNG, individually and in his official capacity with the United States Department of Agriculture; Milton Hertz, Earl J. Badenbaugh, Vern Nepple, William Penn, individually and in their official capacities with the Agricultural Stabilization and Conservation Services; Morris Westfall, J.D. Everts, Billy Joe West, Larry Bock, Dan Jennings, David Schwab, individually and in their official capacity with the Missouri State Agricultural Stabilization and Conservation Commission, Appellants.**

No. 92–3850.

United States Court of Appeals, Eighth Circuit.

Submitted June 17, 1993.

Decided Sept. 13, 1993.

Jennifer H. Zacks, Washington, DC, argued (Stuart M. Gerson, Stephen B. Higgins, Barbara L. Herwig and Jennifer H. Zacks appear on the brief), appellants.

Counsel who presented argument on behalf of the appellee was William E. Moench, St. Louis, MO, argued (Mary Anne Sedey and Richard P. Dooling appear on the brief), appellee.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

HEANEY, Senior Circuit Judge.

Robert V. Krueger, Jr., an employee of the United States Department of Agriculture, filed a *Bivens* action against eleven of the department's officials, alleging that he had been fired for his whistle-blowing activities. The district court dismissed the suit, holding that *Bivens* was not an appropriate vehicle for this action. Krueger appealed and we reversed the district court and remanded the action, holding that this action fell within *Bivens'* purview. *See Krueger v. Lyng,* 927 F.2d 1050 (8th Cir.1991). The defendants then moved for summary judgment, arguing that they were protected by qualified immunity. The district court denied both this motion and the motion to amend in which the defendants first raised the issue of absolute immunity. Although we agree with most of the district court's immunity determinations, we reverse and remand, directing the district court to dismiss certain defendants from the suit.

I

Krueger, former County Executive Director (CED) for the Agriculture Stabilization and Conservation Service (ASCS), was suspended from his position by letter dated December 12, 1986. This letter was signed by J.D. Everts, Chairman of the Missouri State Agricultural Stabilization and Conservation Committee (State Committee), and by Morris Westfall, Executive Director of the Missouri ASCS (SED). On January 28, 1987, a "hearing" on Krueger's suspension was held. It was attended by Morris Westfall, J.D. Everts, David Schwab, and Billy Joe West. (Everts, Schwab, and West were members of the State Committee at that

time.)[1] At the "hearing," Krueger's attorney was permitted to respond to the charges of the State Committee and to complaints made by county employees, but he was not given an opportunity to present any evidence that Krueger had been discharged in retaliation for his actions concerning the reporting of abuses occurring in Audrain County's ASCS office.[2] None of the procedural safeguards of a judicial or quasi-judicial hearing were accorded to Krueger. The next day, January 29, 1987, Everts sent Krueger a letter stating that Krueger had been discharged and that he had the right to appeal the action of the State Committee to Deputy Administrator Earle J. Bedenbaugh[3] as provided by the regulations.

Krueger appealed to the Deputy Administrator and requested a hearing before a hearing examiner, which was held from April 8–10, 1987. Both Krueger and the State Committee presented witnesses and were allowed to cross-examine witnesses. Krueger's counsel argued that the charges were minor, not warranting discharge, and were actually the result of a vendetta against Krueger because of the strained relationship between Krueger and Westfall since the circumstances surrounding the audit.[4] Krueger, however, was again denied the opportunity to present evidence that related to the audit, and the hearing examiner recommended that the discharge be sustained.[5] Bedenbaugh adopted the recommendation. Krueger then commenced the present action in the United States District Court for the Eastern District of Missouri.

## II

We review the denial of the defendants' motion for summary judgment de novo applying the same standard as did the district court. *See Hall v. Lombardi,* 996 F.2d 954, 957 (8th Cir.1993). The district court in this case determined that at the time of the discharge, the United States Constitution clearly forbade discharging a government employee for speaking on a matter of public concern. The court added that at trial Krueger would have to prove that his protected speech was a substantial or motivating factor in the decision to fire him and that the defendants could avoid liability by proving that Krueger would have been fired in any event for conduct unrelated to his protected speech. Because the court found that there is a genuine issue of material fact on this issue, it ruled summary judgment inappropriate. On defendants' motion for alteration or amendment of the judgment, the district

---

1. The State Committee in this case consisted of three members who were appointed by the Secretary of Agriculture and served one-year terms.

2. Evidence submitted to the panel included the following:

   a. Suspension letter of December 12, 1986.
   b. Signed county employee statements prepared by the state office.
   c. Krueger's letter dated February 22, 1987, in which he responds to the allegations set forth in the suspension letter of December 12, 1986.
   d. Memorandum of October 20, 1986, from Westfall regarding guidance on hiring of temporaries.
   e. Audrain County executive session minutes of the January 8, 1987, meeting which were prepared by the state office.
   f. An addendum prepared by the County Committee to clarify the minutes of the January 8, 1987, meeting. This meeting was allegedly taken over by state office personnel who called an executive session and closed the meeting despite the County Committee members' objections.
   g. Signed statements from county employees in which they describe the changes they made to the original statements prepared by the state office for their signatures.

3. We recognize that defendant Earle J. Bedenbaugh's name was misspelled in *Krueger v. Lyng,* 927 F.2d 1050 (8th Cir.1991). For purposes of consistency, however, Bedenbaugh's name will remain misspelled in the caption of this opinion, but will be spelled correctly in the text.

4. In response to Krueger's discovery of abuses, the State Committee ultimately voted to request an audit by the Department of Agriculture's Office of the Inspector General. The final report of the audit, which was issued in April of 1986, substantiated the existence of improprieties discovered by Krueger and indicated that these improprieties had been corrected during Krueger's tenure as CED.

5. The hearing examiner stated that:

   [I]t has been shown that there is a strained relationship between these two. But I don't want to get involved with all of the particulars in regard to other charges. I want to leave it to this.
   Tr. at 757.

court held that because the plaintiff had come forward with some evidence from which a reasonable jury could conclude that his exercise of protected speech was a substantial or motivating factor in his discharge, it would not alter or amend its judgment. The court further held that the defendants' contention regarding absolute immunity was without merit.[6] The defendants appeal from the district court's denial of their motion for summary judgment and their motion to alter or amend.

## A

We begin our discussion with the claims of Everts, West, Schwab, and Dan Jennings[7] for absolute immunity.[8] Unless the facts relating to certain defendants are similar, as they are for these members of the State Committee, we shall consider each defendant's claim to immunity individually.

■ Whether the function of the State Committee in firing Krueger was a "classic" adjudicatory function so as to entitle its members to the protection of absolute immunity as opposed to qualified immunity turns on a number of factors set forth by the Supreme Court in *Cleavinger v. Saxner,* 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985), and *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). This court has summarized those factors as follows:

"(a) the need to assure that the individual can perform his [or her] functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal."

*Brown v. Griesenauer,* 970 F.2d 431, 438 (quoting *Cleavinger,* 474 U.S. at 202, 106 S.Ct. at 501). Having considered the applicability of these factors to these members of the State Committee, we determine that they are not entitled to absolute immunity. First, the suspension "hearing" process was not an adversary one. Krueger was not given an opportunity to call witnesses of his own or to cross-examine the witnesses against him. Rather, the testimony received was in the form of letters from disgruntled employees who were not present at the hearing and whose statements were not given under oath. Second, there was little probability that any errors in the State Committee proceeding, which limited its consideration to employee allegations against Krueger, would be corrected on appeal because when the matter was heard by the hearing examiner, he too refused to permit evidence that would have tended to establish that Krueger was discharged because of his whistle-blowing activities.[9] Rather than having acted as a review

---

**6.** Krueger seeks an award of sanctions under Fed.R.App.P. 38, arguing that the defendants' defense of absolute immunity first asserted in their motion to alter or amend is frivolous, untimely, and improperly preserved. Krueger further argues for a sanctions award on the basis of defendants' presentation of purely factual issues on appeal. We deny Krueger's requests.

Krueger also argues that the issue of absolute immunity is not properly before the court. We disagree. This issue was raised before the district court and decided by it.

**7.** Defendants contend that Jennings was one of "the defendants who conducted the initial hearing on the charges against Krueger...." Brief for Appellants at 16. Although it does not appear from the record that Jennings was physically present at Krueger's suspension "hearing" on January 28, 1987, the record does show that Jennings participated in the decision to suspend Krueger in December 1986.

**8.** There are two types of immunity from personal liability for damages available to government officials: absolute and qualified immunity. *Brown v. Griesenauer,* 970 F.2d 431, 436 (8th Cir.1992).

**9.** The hearing examiner stated in his analysis that

Mr. Krueger's attorney argued that the charges were minor and no reason to discharge an employee. He contended from the beginning that the action was a vendetta against Mr. Krueger orchestrated by the SED, Morris Westfall. Mr. Krueger contends that Morris Westfall had been difficult to work with. He stated that there had been strained relations between them since an audit was performed. *I would not permit the introduction of evidence or testimony relating to the audit.* However, the Agency stipulated that there had been friction between Mr. Krueger and the SED.

board, the aforementioned members of the State Committee acted simply as a discharging authority pursuant to 7 C.F.R. § 7.28(a) (1987), and are consequently not entitled to absolute immunity.

■ Larry Bock presents an entirely different situation. Bock was a member of the State Committee in 1984, years before Krueger's discharge, and there is no evidence in the record that he participated in the decision to discharge Krueger. Krueger indicates that Bock told him "to listen to Westfall's directions" regarding the scope of the compliance audit and that "Westfall was concerned that [Krueger] was going to get the audit into an area where it didn't belong and that a back audit would not serve any useful purpose." Krueger Affidavit at 7. Because no evidence has been presented that Bock played any role in the discharge, he should be dismissed as a defendant in this action. We need not even discuss absolute immunity, because he has done nothing for which he could be held liable.

■ Westfall's claim of absolute immunity is, like the claims of Everts, Schwab, Jennings, and West, without merit. He played an important role in Krueger's discharge, and may have been the leader in this effort. *See supra* n. 9. As a participant in the suspension proceeding, he did not act in an adjudicatory capacity, but in an administrative capacity, and is thus not entitled to absolute immunity.

■ Unlike Westfall and the others, Bedenbaugh's action sustaining Krueger's discharge appears to have been adjudicatory in nature. No evidence appears in the record to suggest that he did anything other than appoint a hearing examiner to hear Krueger's appeal and then adopt the hearing examiner's recommendation and sustain the discharge. Because his function in the discharge appears to have been exclusively ad-

judicatory, he is entitled to absolute immunity.

### B

■ Because we find that Everts, Schwab, Jennings, West, and Westfall are not entitled to absolute immunity, we must now consider their claims for qualified immunity. "Qualified immunity protects government officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Brown*, 970 F.2d at 436 (citations omitted). Having carefully reviewed the record, we conclude, as did the district court, that Krueger has presented sufficient evidence to reach the jury on whether his constitutionally protected speech was a substantial or motivating factor in the decision by these defendants to fire him. Consequently, these defendants are not entitled to qualified immunity.

Finally we reach the four remaining defendants—Richard E. Lyng, Milton Hertz, Vern Nepple, and William Penn—who are officials of the United States Department of Agriculture. Having carefully reviewed the record for evidence of their involvement in Krueger's discharge, we have found none.[10] The actions against each of them should therefore be dismissed. We need discuss neither absolute nor qualified immunity in their regard because, like Bock, there is no evidence to suggest they played any role in the discharge.

### III

We affirm the district court's denial of absolute and qualified immunity to Everts, West, Jennings, Schwab, and Westfall. We reverse, however, with regard to Bedenbaugh, whom we determine is entitled to

---

H.E. Maynard, Director, Appeals, Staff, Recommendation to Deputy Administrator Bedenbaugh, at 5 (June 11, 1987) (emphasis added).

10. The only evidence in the record relating to these defendants is a statement by Krueger in his September 27, 1989, affidavit:

> Although Mr. Westfall told me to keep him informed, in each of my conversations with

him, he discouraged my suggestions that the situation needed to be investigated. He told me in one conversation that our Washington superiors were concerned about the possibility of negative public relations and that harsh disciplinary actions against farmers who had obtained loans and subsidies improperly would generate bad public relations for the agency.

absolute immunity, and Bock, Lyng, Hertz, Nepple, and Penn, all of whom appear to have had no involvement in Krueger's discharge and should consequently be dismissed from this action. We remand to the district court for further proceedings consistent with this opinion and direct that one-third of the costs of this appeal be taxed to Krueger with the remaining two-thirds taxed to Everts, Jennings, West, Schwab, and Westfall.