# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1516

_____

Catherine Leapheart

*Plaintiff - Appellee*

v.

Tyrone Williamson, Individually and as Mayor for the City of Russellville,
Arkansas; Cliff Kirchner, Individually and as city council for the City of
Russellville, Arkansas; Phillip Carruth, Individually and as city council for the City
of Russellville, Arkansas; Freddie Harris, Individually and as city council for the
City of Russellville, Arkansas; Bill Eaton, Individually and as city council for the
City of Russellville, Arkansas; Robert Wiley, Individually and as city council for
the City of Russellville, Arkansas; Kevin Freeman, Individually and as city council
for the City of Russellville, Arkansas; Randal Crouch, Individually and as city
council for the City of Russellville, Arkansas; Garland Steuber, Individually and as
city council for the City of Russellville, Arkansas

*Defendants - Appellants*

Larry Holman, Individually and as city council for the City of Russellville, Arkansas

*Defendant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: November 14, 2012
Filed: January 29, 2013

_____

Before RILEY, Chief Judge, WOLLMAN and MELLOY, Circuit Judges.
_____

MELLOY, Circuit Judge.

Catherine Leapheart sued the former Mayor of the City of Russellville, Arkansas, and the members of the Russellville City Council in federal district court, alleging age and race discrimination. The City Council members (hereinafter "Defendants") filed a motion for summary judgment, asserting legislative immunity with respect to the claims against them in their individual capacities. The district court denied the claim of legislative immunity, finding that the elimination of Leapheart's position was not legislative action and therefore not protected by legislative immunity.[1] The Defendants filed an interlocutory appeal, seeking a reversal of the district court's denial of legislative immunity. For the reasons stated below, we reverse the denial of legislative immunity and remand for proceedings consistent with this opinion.

I.    Background

In February 2010, the City of Russellville posted a job advertisement for a Director of Human Resources position. At the time, the Director of Human Resources was classified as a department head. The Mayor, in this case Mayor Tyrone Williamson, had the final decision-making authority on who to appoint for department-head positions. The City Council could override the Mayor's appointment with a two-thirds vote under Ark. Code Ann. § 14-142-110(a).

Twenty people, including Leapheart, applied for the position. Leapheart is an African American woman who, at the time, was sixty-seven years old. The Mayor

---

[1]The district court dismissed Leapheart's claim against Russellville City Council member Larry Holman because he was not a member during the relevant time period.

selected five people, including Leapheart, for the Defendants to interview. The Defendants interviewed Leapheart during the week of February 22, 2010. The Defendants interviewed the last finalist on Monday, March 1.

On Thursday, March 4, three of the Defendants called a special meeting for the next day. The purpose of the meeting was to tell Mayor Williamson whom they recommended for the position. Mayor Williamson could not attend the meeting. Mayor Williamson told one of the Defendants that he would take the weekend to decide who to hire and let the Defendants know his decision on Monday. However, Mayor Williamson hired Leapheart as Director of Human Resources on Friday, March 5.

On Friday, March 5, two of the Defendants called another special meeting for Sunday, March 7.[2] At the Sunday meeting, the Defendants passed Ordinance No. 2073 — "An Ordinance Restructuring the Human Resources Personnel of the City of Russellville and For Other Purposes." Ordinance No. 2073 eliminated the Department of Human Resources and created a nondepartment-head position in the city government titled "Human Resources." As the position was now a nondepartment-head position, the Defendants had the sole authority to hire and fire for the position. In short, Ordinance No. 2073 moved authority over the position from the Mayor to the City Council. Ordinance No. 2073 made no other changes to the duties associated with the position.[3]

---

[2]The parties dispute whether the Defendants had knowledge of Leapheart's hiring when scheduling the March 7 meeting or at the meeting itself.

[3]Previously, the position had included human resources and administrative assistant duties, with a salary of $50,000. Now, the position entailed solely human resources duties, with a salary of $40,000. However, these changes were made either before or during the interview process and not via Ordinance No. 2073.

-3-

Leapheart showed up for work on Monday morning, March 8. At the time, she had no knowledge of Ordinance No. 2073. That morning, Mayor Williamson vetoed Ordinance No. 2073. After learning of the veto, the Defendants called another special meeting for that same day at 2:00 p.m. The Defendants voted unanimously to override Mayor Williamson's veto. The Defendants claim they did not know Mayor Williamson had hired Leapheart when they voted to override Mayor Williamson's veto. Later that Monday afternoon, Mayor Williamson notified Leapheart that the Defendants had eliminated her position.

On Tuesday, March 9, the Defendants called a fourth special meeting. At this meeting, the Defendants voted to override Mayor Williamson's appointment of Leapheart. The Defendants also wrote a letter to Leapheart, explaining that her position no longer existed and apologizing for any confusion. The City of Russellville then reposted the position as a human resources position under the control of the City Council. Leapheart did not apply for the new position.

Leapheart filed a charge of discrimination with the EEOC and later filed suit against each member of the City Council, both in their individual and official capacities. At the district court, the Defendants moved for summary judgment on various bases, including a claim of legislative immunity. The district court rejected the claim of legislative immunity. The court stated:

> The Council's decision to enact Ordinance No. 2073, abolishing the Human Resources Department and director position, is a legislative act. However, at the March 7 meeting, the Council not only abolished the Director of Human Resources position but also established a new human resources position with substantially the same responsibilities. At a special meeting on March 9, the Council elected to overrule the Mayor's decision to hire [Leapheart] instead of moving her to a new position. The decision to terminate [Leapheart] rather than to assign her to a new human resources position was not a legislative act because it targeted

-4-

[Leapheart] individually and did not "involve 'policy-making of a general purpose.'" In re Montgomery Cnty., 215 F.3d 367, 376 (3d Cir. 2000) (quoting Carver v. Foerster, 102 F.3d 96, 100 (3d Cir. 1996)).

The Defendants filed an interlocutory appeal of the district court's denial of summary judgment. The Defendants appealed only the denial of legislative immunity.

II.     Discussion

"While the denial of a motion for summary judgment is generally unreviewable as an impermissible interlocutory appeal, we have limited authority under the collateral order doctrine to review the denial of a motion for summary judgment to the extent the motion is based on the right to absolute . . . immunity . . . ." Hinshaw v. Smith, 436 F.3d 997, 1002 (8th Cir. 2006). We review a district court's decision regarding legislative immunity de novo. Redwood Vill. P'ship v. Graham, 26 F.3d 839, 840 (8th Cir. 1994).

A.     General Framework for Legislative Immunity

A local legislator is entitled to absolute legislative immunity for acts undertaken within the "sphere of legitimate legislative activity." Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998) (quoting Tenney v. Brandhove, 341 U.S. 367, 376 (1951)) (internal quotation mark omitted). When determining whether an act is legislative, the Supreme Court applies a functional test. Redwood Vill., 26 F.3d at 840 (citing Harlow v. Fitzgerald, 457 U.S. 800, 810 (1982)). "Legislation . . . looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power." Prentis v. Atl. Coast Line Co., 211 U.S. 210, 226 (1908) (quoted in Brown v. Griesenauer, 970 F.2d 431, 437 (8th Cir. 1992)). For example, passing an ordinance is a legislative act. Bogan, 523 U.S. at 55.

Under this functional test, "[w]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." Id. at 54. A legislator's potential or alleged motives are "wholly irrelevant to [the] determination of whether [a legislator is] entitled to legislative immunity." State Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 90 (2d Cir. 2007) (citing Bogan, 523 U.S. at 55). The issue is "'whether, *stripped of all considerations of intent and motive*, [the petitioner's] acts were legislative.'" Id. (alteration in original) (quoting Bogan, 523 U.S. at 55).

### B.      Legislative Immunity and Employment Decisions

Our circuit has not considered when employment decisions may constitute legislative action. However, many circuits distinguish "between actions that involve the elimination of positions for policy reasons (legislative actions) and actions that result in an individual's termination for reasons that relate to the individual (administrative actions)." Bagley v. Blagojevich, 646 F.3d 378, 394 (7th Cir. 2011).

First, the hiring and firing of specific individuals generally is not protected by legislative immunity because it is an administrative action. In re Montgomery Cnty., 215 F.3d 367, 376–77 (3d Cir. 2000) (citing Bogan, 523 U.S. at 55–56). For example, in Montgomery County, local legislators voted to fire a County employee. Id. at 371. The County employee then filed a civil rights action, and the legislators claimed legislative immunity. Id. The court held that the legislators' action was administrative, and therefore not protected by legislative immunity, because the case involved "a decision to eliminate a particular employee rather than the position that employee happens to hold." Id. at 376. The court continued: "Firing a particular employee is a personnel decision that does not involve general policymaking. Appellants' firing of [the County employee] did not reach beyond the particular occupant of the office." Id. at 377.

-6-

In contrast, the wholesale elimination of a position is considered legislative action protected by legislative immunity because it "may have prospective implications that reach well beyond the particular occupant of the office." Bogan, 523 U.S. at 56. Most often, elimination-of-position cases involve situations where the employing governmental body terminates many positions at once, typically through budget-reduction legislation. See, e.g., Almonte v. City of Long Beach, 478 F.3d 100, 107 (2d Cir. 2007). However, an action can still be legislative even if the legislators only eliminate one position. See Bogan, 523 U.S. at 55–56 (holding the elimination of a department was legislative action even though the department consisted of one employee and the legislators were targeting that one employee).

We find Montgomery County is not applicable to Leapheart's case because Montgomery County is a standard hire/fire case.[4] The Defendants did not fire Leapheart, but eliminated her position.[5] Montgomery County is not applicable even if the Defendants targeted Leapheart because "stripped of all considerations and motives" the Defendants' action was not a firing.

C.    Canary v. Osborn Discussion

Even though we conclude that Montgomery County does not control, this conclusion does not end our analysis. Leapheart's case is not a typical elimination-of-

---

[4]Although the Defendants did vote to override the Mayor's appointment of Leapheart, this occurred on March 9, 2010, *after* the Defendants had voted to eliminate Leapheart's position.

[5] Leapheart claims the Defendants did not eliminate her position. Instead, she claims they "transferred the position." Leapheart does not dispute that the Defendants passed Ordinance No. 2073 or the text of the Ordinance; she simply characterizes the effect of Ordinance No. 2073 differently.

position situation because the Defendants not only eliminated her position, but also instantaneously created a seemingly identical position. The Sixth Circuit addressed facts similar to those at issue here in Canary v. Osborn, 211 F.3d 324 (6th Cir. 2000). In Canary, a former assistant principal sued the school board under 42 U.S.C. § 1983 for voting against renewal of his employment contract. Canary, 211 F.3d at 324. The school board claimed that it was entitled to legislative immunity under Bogan because it eliminated the assistant principal's position. Id. at 328. The court denied the school board's claim for multiple reasons, but in part because the school board's actions "did not have prospective implications that reached well beyond the particular occupant of the office," as the job duties of the assistant principal were simply transferred to a new position. Id. at 330–31. The court held that a "'job is not abolished under circumstances where the appointing authority simply transfers that job's duties to a new employee to perform.'" Id. at 331 (quoting In re Appeal of Woods, 455 N.E.2d 13, 15 (Ohio Ct. App. 1982)).

The Defendants in the present case are entitled to legislative immunity because this case is distinguishable from Canary. Like Canary, the job duties appeared to stay the same after the Defendants recreated the human resources position. However, control over the position moved from the Mayor to the City Council, a quintessential legislative decision. Therefore, in the present case, moving control over human resources has "implications beyond the occupant of a particular office" that were lacking in Canary. See also Bagley, 646 F.3d at 395–96 (declining to follow Canary because the newly created position, although similar, had different job tasks than the eliminated position at issue).

III.    Conclusion

For the foregoing reasons, we reverse and remand for proceedings consistent with this opinion.

_____