# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1324

_____

John L. Young; Georgetta I. Young

*Plaintiffs - Appellants*

v.

Mercer County Commission, A Missouri Political Subdivision; Clifford Shipley, individually, and his official capacity as Mercer County Commissioner; Zack Martin, individually, and in his official capacity as Mercer County Commissioner; Shane Grooms, individually, and in his official capacity as Mercer County Commissioner

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - St. Joseph

_____

Submitted: September 22, 2016
Filed: February 27, 2017
[Published]

_____

Before COLLOTON, MELLOY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

John and Georgetta Young brought this action against Clifford Shipley, Shane Grooms, and Zach Martin individually and in their official capacities as Mercer

County Commissioners, and the Mercer County Commission. The district court[1] granted Defendants' motion for summary judgment, finding that they were protected by absolute legislative immunity and qualified immunity, and the Youngs appealed. For the reasons stated herein, we affirm.

## I. Background

Viewed in the light most favorable to the Youngs as the non-moving parties, the facts relevant to this appeal are as follows. See Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014). Mr. Young is the elected part-time prosecutor for Mercer County, Missouri, and he also operates a private law practice there. The Youngs own a home and an office building in Mercer County.

Mr. Young and the Commission[2] entered into the "Prosecutor/County Lease Agreement" (the "Agreement") covering the Youngs' office building. Pursuant to the Agreement, the office building was designated as Mr. Young's private law office and that of the prosecuting attorney. Additionally, the parties set forth the following terms in the Agreement: (1) the Commission was to provide one full-time secretary, a telephone, and office supplies; (2) Mr. Young was to pay for utilities, internet, and liability insurance for the building; and (3) the Commission was to pay Mr. Young $350.00 monthly "for rent . . . to offset expenses being paid privately for said office." J.A. 240.

---

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

[2]References to the "Commission" include the Mercer County Commission and the three named defendants in their official capacities. See Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." (citing Brandon v. Holt, 469 U.S. 464, 471-72 (1985))).

On June 27, 2013, the Commission passed ordinance number 06272013 (the "911 Ordinance"), which mandated that every resident of the county be assigned a permanent 911 address. To facilitate location by emergency responders, the 911 Ordinance directed the Commission to place an address sign where each residential driveway meets the adjoining county or state road. The Youngs' home sits on the corner of United States Highway 65 and a county road named Gaza Place. As a result of the 911 Ordinance, the Youngs' address was changed in October 2013 from "Route 1, Box 34" to "20667 Gaza Place." Shortly thereafter, the Youngs began contesting this change of address because, they argued, the Gaza Place address sent visitors to the side of their house and "a name such as Gaza that people are likely to associate with Middle Eastern conflict arguably is not popular." Appellants' Br. 6. Over the next several months, the Youngs repeatedly requested that the Commission change their address to reflect a location on Highway 65.

At some point during the Fall of 2013, Mr. Young began insinuating that he would take legal action to resolve the address dispute, and the Commission hired attorneys Matthew Aplington and Ivan Shraeder to look into the matter. As part of this representation, the Commission provided these attorneys with a copy of the Agreement, and Mr. Shraeder advised the Commission that the Agreement violated the Missouri Constitution. Specifically, he identified as problematic the Commission's payment of public money to Mr. Young in the form of rent and Mr. Young's use of the full-time prosecutorial secretary for work arising out of his private practice.

Thereafter, four events occurred that form the basis of the present suit. First, in December of 2013, the Commission denied Mr. Young's proposed budget request for part-time secretarial assistance in the amount of $5000. Then, on March 31, 2014, the Commission terminated the Agreement and made available space in the county courthouse for the prosecutor's office; suspended the $350.00 monthly rental payments; and wrote a letter to the state attorney general requesting further

-3-

investigation into the arrangement called for in the Agreement. The latter three actions were all taken at the behest of Mr. Shraeder.

On August 19, 2014, the Youngs brought this action, asserting a number of claims centered on their contention that the defendants took the above actions in retaliation for their address complaints. Taken from the operative complaint, those claims are as follows: Count 1 sought a declaratory judgment or injunction to prevent the Commission from assigning to the Youngs a Gaza Place address, to declare the 911 Ordinance invalid, and to prevent any further acts of retaliation. Count 2 requested damages from Shipley, Grooms, and Martin in their individual capacities under 42 U.S.C. § 1983 for retaliation in violation of the Youngs' First Amendment rights. Finally, Count 3 asserted that the 911 Ordinance's mandate that an address sign be placed on the Youngs' property constituted a taking in violation of the Fifth Amendment.

The defendants moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and the district court issued an order granting this motion in part and denying it in part.[3] Specifically, the court determined that the defendants had absolute legislative immunity for their actions in passing the 911 Ordinance and assigning to the Youngs the Gaza Place address, that the court would not invalidate the ordinance, and that the Youngs' takings claim failed to the extent it sought recovery based on the particular address assignment. However, the court denied the motion insofar as it sought to dismiss the retaliation and takings claims. It found, based on the record as it existed at that time, that the defendants were not

---

[3]This same order granted the Youngs' motion for leave to file their second amended complaint with the claims outlined above. In that order, the court noted that granting leave to file the amended complaint would normally moot a pending motion to dismiss. However, because the parties agreed that the arguments controlled both the original and amended complaints, the court went on to address the defendants' motion to dismiss.

entitled to legislative immunity for the complained-of actions and that the takings claim could proceed based on the permanent address sign required by the ordinance.

After further discovery, the defendants filed a motion for summary judgment arguing that the retaliation claims were barred by legislative immunity and that the takings claim failed because the Commission was authorized by Missouri law to erect address signs. The district court granted this motion. Dismissing the takings claim, the court found that the placement of an address sign on the Youngs' property was neither a per se nor a regulatory taking. The Youngs do not appeal this dismissal. As to the retaliation claim, the court held that all four of the above actions were protected by legislative immunity or, in the alternative, by qualified immunity.[4] It is from this latter ruling that the Youngs seek review.

## II. Discussion

We review de novo the district court's grant of summary judgment on the basis of immunity. See Gatlin ex. rel. Estate of Gatlin v. Green, 362 F.3d 1089, 1092 (8th Cir. 2004) (applying standard to qualified immunity); Redwood Vill. P'ship v. Graham, 26 F.3d 839, 840 (8th Cir. 1994) (applying standard to absolute immunity). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

At issue is whether the aforementioned actions are protected by either legislative or qualified immunity. At the outset, however, we must first identify the specific defendants from whom the Youngs seek damages. According to their brief,

---

[4]The district court limited its ruling on the qualified immunity issue to the Commission's actions in terminating the Agreement, suspending the $350.00 payments, and requesting the attorney general investigation.

the Youngs have only appealed the dismissal of their "claim for damages resulting from retaliation in violation of the First Amendment." Appellants' Br. vii. In Count II of their Second Amended Complaint,[5] the Youngs specifically claim "Defendants Shipley, Martin, and Grooms" are responsible for the complained-of retaliation. Pls.' Second Am. Compl. ¶ 55, ECF No. 78. Notably absent from any of the Youngs' pleadings in this matter is a claim that any specific Mercer County policy or practice was responsible for the alleged retaliation. As a result, the only defendants from whom the Youngs could conceivably recover money damages are these three Commissioners in their individual capacities. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."); Zepp v. Rehrmann, 79 F.3d 381, 385 (4th Cir. 1996). Therefore, the only claim on appeal is the Youngs' claim for damages for retaliation against defendants Shipley, Martin, and Grooms in their individual capacities.

In short, the Youngs argue that the Commissioners'[6] actions were taken in retaliation for the Youngs exercising their First Amendment rights by complaining about the address assigned to their home under the 911 Ordinance. The Youngs contend that the actions singled them out rather than formulated broad public policy and that the actions were administrative, rather than legislative, in nature. As such, the Youngs argue that none of the actions fall within "the sphere of legitimate legislative activity," see Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998) (quoting Tenney v. Brandhove, 341 U.S. 367, 376 (1951)) (internal quotation marks omitted), and are therefore not protected by absolute legislative immunity. Alternatively, the Youngs contend there are genuine disputes of material fact that preclude the district

---

[5]Count II is the only claim for damages present in this action.

[6]References to the "Commissioners" are to defendants Clifford Shipley, Zach Martin, and Shane Grooms in their individual capacities.

court's grant of qualified immunity. We address legislative immunity first and then turn our attention to qualified immunity.

## A. Legislative Immunity

After noting that state and regional legislators possessed absolute immunity for their legislative activities, the Supreme Court held in Bogan v. Scott-Harris that "local legislators are likewise absolutely immune from suit under § 1983 for their legislative activities." 523 U.S. at 49. "Regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability." Id. at 52. This "immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" Id. at 54 (quoting Tenney, 341 U.S. at 376).

"When determining whether an act is legislative, the Supreme Court applies a functional test." Leapheart v. Williamson, 705 F.3d 310, 313 (8th Cir. 2013). Under this test, "'[w]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it.'" Id. (alteration in original) (quoting Bogan, 523 U.S. at 54). "A legislator's potential or alleged motives are 'wholly irrelevant to [the] determination of whether [a legislator is] entitled to legislative immunity.'" Id. at 313-14 (alterations in original) (quoting State Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 90 (2d Cir. 2007)). Therefore, the primary question is "whether, stripped of all considerations of intent and motive, [the] actions were legislative." Bogan, 523 U.S. at 55.

Certain actions—such as voting for an ordinance—are by their nature "quintessentially legislative." Id. At the most basic level, "[l]egislation . . . looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power." Leapheart, 705 F.3d at 313 (second alteration in original) (quoting Prentis v. Atl. Coast Line Co., 211 U.S.

210, 226 (1908)) (internal quotation marks omitted). As a result, the parties agree that the Commissioners are entitled to legislative immunity for passing the 911 Ordinance.

The Youngs argue, however, that the Commissioners are not entitled to legislative immunity for denying Mr. Young's budget request for part-time help. We disagree. An action that "reflect[s] a discretionary, policymaking decision implicating the budgetary priorities of the [county]" falls within the sphere of legislative activity. Bogan, 523 U.S. at 55-56. As do those governing "a field where legislators traditionally have power to act." See id. at 56 (quoting Tenney, 341 U.S. at 379) (internal quotation marks omitted). Under Missouri law, "the county commission may revise, alter, increase or decrease the items contained in the budget and may eliminate any item or add new items." Mo. Ann. Stat. § 50.610. Therefore, decisions about whether to approve or deny proposed budget items fall squarely within the discretion of the Commission as a legislative body, and we have little difficulty concluding that the Commissioners are entitled to legislative immunity for their action denying Mr. Young's budget request for part-time assistance.

The Youngs next contend that the Commissioners are not entitled to legislative immunity for terminating the Agreement and ceasing the $350.00 monthly rent payments due thereunder.[7] On this point, the Youngs argue this action cannot be budgetary because the Commissioners terminated the Agreement in March of 2014 and the budget for that year was finalized in December of 2013. Alternatively, the

---

[7]Although the Youngs' counsel seemed to treat these two points separately during oral argument, the issues merit joint discussion because the location of the prosecutor's office and the rental payments were both called for by the Agreement. Therefore, when the Commission terminated the Agreement, there was no need to continue paying rent. Moreover, the Youngs only make a single reference to the rent payments in the context of legislative immunity; the rest of the argument is focused on the Commission's termination of the Agreement.

Youngs assert that the district court erroneously concluded the Commissioners' decision would affect future Mercer County prosecutors. Finally, using language from several of the cases cited above, the Youngs contend that terminating the Agreement was not within the sphere of legislative activity because no legislation resulted from it and the action was not a necessary step in the passage of legislation.

Although this is a closer question, we believe the district court correctly ruled the Commissioners are entitled to legislative immunity for their termination of the Agreement and cessation of rent payments. As we have noted, "the various activities of most [government] officials cannot be [easily or definitively] characterized as only administrative, legislative, or judicial." Brown v. Griesenauer, 970 F.2d 431, 436 (8th Cir. 1992) (alterations in original) (quoting Haskell v. Wash. Twp., 864 F.2d 1266, 1277-78 (6th Cir. 1988)) (internal quotation marks omitted). Characterization difficulties become even more prominent at the regional level because of the differences between the duties of state and federal legislators and those at a purely local level.

Under section 49.510 of the Missouri Annotated Statutes, "[i]t shall be the duty of the county to provide offices or space where the officers of the county may properly carry on and perform the duties and functions of their respective offices." Moreover, the funding for this matter shall be "paid out of the county treasury of said county at the time and in the manner that the county commission may direct." Id. Thus, regardless of whether the decision to terminate the Agreement was budgetary or an independent act, the Commission is the legislative body tasked with housing and funding the county offices. When the Commission discovered the Agreement was possibly in violation of the state constitution, the Commissioners were entitled to take action to remedy the situation.

We reject the Youngs' argument that the district court improperly considered the potential consequences of the action. See Bogan, 523 U.S. at 56 (in determining

an activity to be legislative, noting that the activity "may have prospective implications that reach well beyond the particular occupant of the office"). Establishing office space in the courthouse for the county prosecutor would affect Young and future prosecutors alike. Moreover, the Youngs adopt far too narrow a reading of precedent in their argument that this cannot be a legislative action because no legislation resulted from it. Under Missouri law, the County Commission is tasked with completing a variety of duties to facilitate the operation of Mercer County. In this instance, the Commissioners met as a legislative body and voted on the appropriate course of action to deal with the possible illegality of a contract into which they had entered. See Mo. Ann. Stat. § 49.070 (requiring a quorum for the county commissions to conduct business). That course of action was legislative, regardless of whether it resulted in an ordinance.

We conclude that the district court correctly ruled that the Commissioners are entitled to legislative immunity for denying Mr. Young's budget request, terminating the Agreement, and ceasing the $350.00 monthly rental payments.

## B. Qualified Immunity

The district court properly found that the Commissioners are entitled to qualified immunity as to their request that the state attorney general review the legality of the Agreement. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "[C]ourts may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all." Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012) (citing Pearson, 555 U.S. at 227). "A clearly established right is one that is 'sufficiently clear that

every reasonable official would have understood that what he is doing violates that right.'" Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting Reichle, 132 S. Ct. at 2093).

The Youngs' argument on this point focuses on their broad contention that "the right to criticize elected officials and seek redress of grievance[s] was clearly established well before the events giving rise to the Youngs' retaliation claim." Appellants' Br. 41. The problem with this argument is the same one the Supreme Court confronted in Reichle where the respondent argued that "cases have settled the rule that, as a general matter[,] the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for his speech." 132 S. Ct. at 2093-94 (alteration in original) (internal quotation marks omitted). Here, as in Reichle, "the right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." Id. at 2094 (citations omitted) (internal quotation marks omitted). Therefore, the Youngs need to establish that on March 31, 2014, when the Commissioners wrote the letter to the state attorney general to request the investigation, they would have understood that the request violated the Youngs' constitutional rights. See Mullenix, 136 S. Ct. at 308. However, no authority has been presented for the proposition that legislators, informed by independent counsel that an agreement may be legally unsound and advised by that counsel to ask the attorney general to investigate the matter, may not follow that advice. See Kincade v. City of Blue Springs, 64 F.3d 389, 399 (8th Cir. 1995) ("Reliance on the advice of counsel is a factor to be weighed in assessing whether a public official is entitled to qualified immunity."). The district court correctly determined that the Commissioners were entitled to qualified immunity for this action.

-11-

## III.

For these reasons, we affirm the district court's grant of summary judgment to the Commissioners.

MELLOY, Circuit Judge, concurring.

I concur because the district court correctly granted summary judgment to the Commissioners. I write separately, however, because I believe the Commissioners' actions of terminating the Agreement and ceasing the $350 monthly rent payments were not legislative. Rather, the Commissioners are entitled to qualified immunity, not legislative immunity, for these actions.

The majority holds that because the Commissioners acted pursuant to section 49.510 of the Missouri Annotated Statues, the decision to terminate the Agreement was legislative. To determine whether the Commissioners' decision was legislative, and thus entitled to legislative immunity, "the critical inquiry is in what capacity the [Commission was] acting at the time of the allegedly unconstitutional or unlawful conduct." Brown v. Griesenauer, 970 F.2d 431, 436 (8th Cir. 1992). In Brown, this Court held that although state law authorized local legislators' challenged action, the action was not truly legislative. Id. at 437. The Court explained that the act challenged in that case, impeaching the mayor, was "not a 'classic' legislative function such as enacting ordinances or establishing municipal policy." Id.

The majority explains that the Commissioners' decision to terminate the Agreement and establish an office in the courthouse affected Young and future prosecutors alike. The Commissioners, however, did not terminate the Agreement because they decided that present and future prosecuting attorneys should have an office in the courthouse. The termination letter mentioned only that the Agreement was unconstitutional; it made no reference to future prosecuting attorneys or where

-12-

they might hold their office. A decision that something is unconstitutional is "essentially judicial or adjudicatory in nature, even though the decision-making body . . . [is] legislative. 'A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist.'" Id. (quoting Prentis v. Atl. Coast Line Co., 211 U.S. 210, 226 (1908)). As a result, the decision to cease rent payments and terminate the Agreement was not legislative and, therefore, the Commissioners are not entitled to legislative immunity.

I would hold, instead, that the Commissioners are entitled to qualified immunity for ceasing rent payments and terminating the Agreement. As the majority states, Young has not established that when the Commissioners took these actions on March 31, 2014, "every reasonable official would have understood that" those actions violated the Youngs' constitutional rights. See Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (citation omitted). Similarly, as the majority notes regarding the Commissioners' letter to the state attorney general, Young has not presented any authority for the proposition that the Commissioners' could not rely on independent counsel, who informed the Commissioners that the Agreement was unconstitutional and advised them to terminate the Agreement. See Kincade v. City of Blue Springs, 64 F.3d 389, 399 (8th Cir. 1995). Thus, the Commissioners are entitled to qualified immunity for these actions.

_____