JESSON, Judge
Appellant John Lesch challenges the district court's determination that he is not entitled to legislative immunity from respondent Lyndsey Olson's defamation suit stemming from a letter Lesch wrote to the mayor of St. Paul. We conclude that the letter is not an act within the sphere of legitimate legislative activity. Accordingly, we affirm.
FACTS
Appellant John Lesch is the state representative for house district 66B, which includes part of Ramsey County. Respondent Lyndsey Olson is the current St. Paul City Attorney and has a background in the Minnesota National Guard.
This case arises from a letter that Lesch sent to the newly elected mayor of St. Paul in early January 2018. In that letter, Lesch congratulated the mayor on a well organized inauguration ceremony. Lesch then noted his experience with previous city administrations regarding lobbying and indicated his interest in beginning a conversation with the mayor's lobbying team before the legislative session began. He then expressed reservations about the mayor's hiring process for department heads.
After noting general apprehension about the mayor's hiring process, Lesch focused on the mayor's appointment of Olson as St. Paul City Attorney. Lesch wrote that he was surprised by the mayor's selection, and that if he had known Olson was being considered for the position, he "would have registered grave concerns over her fit for the office." The letter continued to outline Lesch's concerns, which included his assertion that his "own experience with Ms. Olson in the Minnesota National Guard revealed her to be a prosecutor who would sacrifice justice in pursuit of a political win-even going so far as to commit misconduct to do so," and that the Minnesota National Guard investigated Olson for running a "toxic working environment." Lesch stated his "great concern" over "an in-coming City Attorney with a preexisting track record of integrity questions and *835 management problems" and expressed his vested interest in the success of the St. Paul City Attorney's office as a former member of that office. Lesch then closed his letter by requesting that the mayor disclose several documents related to the hiring of Olson, including any information about investigations of Olson by the Minnesota National Guard and Olson's disciplinary record.
Based on Lesch's statements in his letter to the mayor, Olson filed a lawsuit against Lesch for defamation per se. Lesch filed a motion to dismiss the action, based in part on his argument that he is entitled to legislative immunity under Minnesota Statutes section 540.13 and the speech or debate clause of the Minnesota Constitution. The district court concluded that Lesch was not entitled to immunity and denied his motion to dismiss. Lesch appeals.[1]
ISSUE
Is Lesch entitled to legislative immunity?
ANALYSIS
Lesch contends that he is entitled to immunity from Olson's suit pursuant to both Minnesota Statutes section 540.13 and the speech or debate clause of the Minnesota Constitution, which provides that, "[f]or any speech or debate in either house they shall not be questioned in any other place." Minn. Const. art. IV, § 10. We review the question of applicability of immunity de novo. Kariniemi v. City of Rockford , 882 N.W.2d 593, 599 (Minn. 2016).
In order to determine whether Lesch is entitled to immunity, we begin by first considering the background and purpose of legislative immunity. In doing so, we turn to federal caselaw for guidance, as the speech or debate clause in the Minnesota Constitution mirrors the speech or debate clause found in the United States Constitution. See U.S. Const. art. I, § 6 (stating that "for any [s]peech or [d]ebate in either House, they shall not be questioned in any other [p]lace"); see also Kahn v. Griffin , 701 N.W.2d 815, 824 (Minn. 2005) (noting that when interpreting the Minnesota Constitution, the supreme court favors uniformity with the United States Constitution and will not "lightly reject" the Supreme Court's interpretation of "substantially similar language"). With that backdrop in mind, we analyze whether Lesch's letter is a legislative act within the sphere of legitimate legislative activity such that he is immune from Olson's suit. Because we conclude that the letter is not a legislative act, Lesch is not entitled to either statutory immunity or immunity under the speech or debate clause.
Background and Purpose
We begin our analysis by considering the historical purpose of legislative immunity. Prior to the adoption of the United States Constitution, "the instigation of criminal charges against critical or disfavored legislators by the executive in a judicial forum was the chief fear prompting the long struggle for parliamentary privilege in England." United States v. Johnson , 383 U.S. 169, 182, 86 S. Ct. 749, 756, 15 L.Ed.2d 681 (1966). Consistent with our system of separation of powers, then, the purpose of the speech or debate clause is to protect legislators from intimidation by the executive branch and "accountability before a possibly hostile judiciary." Id. at 180-81, 86 S. Ct. at 755.
*836 In interpreting the protections offered by the speech or debate clause, courts are to construe the clause broadly. Kilbourn v. Thompson , 103 U.S. 168, 204, 26 L.Ed. 377 (1880). And while the essence of protected activity is-as the name suggests-speech or debate on the floor of the legislature, courts have determined that immunity under the speech or debate clause extends to matters other than "pure speech or debate in either [h]ouse." Gravel v. United States , 408 U.S. 606, 625, 92 S. Ct. 2614, 2627, 33 L.Ed.2d 583 (1972). Indeed, immunity applies to actions that are within the "sphere of legitimate legislative activity." Tenney v. Brandhove , 341 U.S. 367, 376, 71 S. Ct. 783, 788, 95 L.Ed. 1019 (1951). And once a court determines that a legislator's activities are within the sphere of legitimate legislative activity, immunity provided by the speech or debate clause is absolute. Eastland v. U.S. Servicemen's Fund , 421 U.S. 491, 501, 95 S. Ct. 1813, 1820, 44 L.Ed.2d 324 (1975).
Although immunity under the speech or debate clause is broadly construed, "[l]egislative acts are not all-encompassing." Gravel , 408 U.S. at 625, 92 S. Ct. at 2627. From caselaw, a spectrum has emerged ranging from acts clearly warranting immunity to those falling outside the scope of protection. For example, legislative acts encompass actions like introducing and voting for a bill, distributing committee reports to other representatives, and providing official committee hearing reports to news reporting and publishing agencies. United States v. Helstoski , 442 U.S. 477, 489, 99 S. Ct. 2432, 2439, 61 L.Ed.2d 12 (1979) ; Doe v. McMillan , 412 U.S. 306, 312, 93 S. Ct. 2018, 2024, 36 L.Ed.2d 912 (1973) ; Green v. DeCamp , 612 F.2d 368, 372 (8th Cir. 1980). But legislative immunity does not extend to the transmittal of allegedly defamatory statements in press releases and newsletters, efforts by members of Congress to influence the executive branch, or attempts to influence the Department of Justice in enforcing the laws. Hutchinson v. Proxmire , 443 U.S. 111, 130, 99 S. Ct. 2675, 2686, 61 L.Ed.2d 411 (1979) ; Doe , 412 U.S. at 313-14, 93 S. Ct. at 2025 ; Johnson , 383 U.S. at 172, 86 S. Ct. at 751.
With this guidance provided by analogous federal law in mind, we turn our attention to Minnesota law. To discern whether Lesch is entitled to legislative immunity, we first examine statutory immunity under Minnesota Statutes section 540.13 and conclude that, while the class of people protected by the statute is broader than the class of people protected by the speech or debate clause, the scope of protected activity is the same under both the statute and the speech or debate clause. Accordingly, we then direct our attention to the question central to our analysis under the speech or debate clause: whether Lesch's actions fall within the sphere of legitimate legislative activity.
Statutory Immunity
In addition to the legislative immunity conferred by the speech or debate clause in the United States Constitution and similar provisions found in state constitutions, federal and state statutes can confer immunity to legislators. Lesch contends he is entitled to immunity under Minnesota Statutes section 540.13, which states:
No member, officer, or employee of either branch of the legislature shall be liable in a civil action on account of any act done in pursuance of legislative duties.
We address this argument first because this court "avoid[s] reaching constitutional questions if there is another way to resolve the case." Ninetieth Minn. State Senate v. Dayton , 903 N.W.2d 609, 624 (Minn. 2017).
Because applicability of this statute presents a question of first impression, we begin by interpreting the statute, a question *837 of law that we review de novo. Cocchiarella v. Driggs , 884 N.W.2d 621, 624 (Minn. 2016). The purpose of statutory interpretation is to determine the legislature's intent. Minn. Stat. § 645.16 (2018). In interpreting a statute, we begin by examining its plain language to determine whether it is ambiguous. Am. Family Ins. Grp. v. Schroedl , 616 N.W.2d 273, 277 (Minn. 2000). And if the statute's meaning is clear and unambiguous, we apply its plain language. Brua v. Minn. Joint Underwriting Ass'n , 778 N.W.2d 294, 300 (Minn. 2010).
Our interpretation of this statute must answer two questions: who the statute applies to and the scope of protected activity. Beginning with who the statute applies to, the plain language of the statute encompasses anyone who is a "member, officer, or employee of either branch of the legislature." Minn. Stat. § 540.13. This is broader than the class of individuals protected by the speech or debate clause: "[t]he members of each house." Minn. Const. art. IV, § 10. As a state representative, Lesch clearly falls within the class of individuals protected by the statute.
Next, we turn to the scope of protected activity. The statute provides immunity for "any act done in pursuance of legislative duties." Minn. Stat. § 540.13. We conclude that this phrase was intended to provide protection analogous to that provided by the speech or debate clause. The speech or debate clause's protection of "any speech or debate in either house" applies broadly to actions within the "sphere of legitimate legislative activity." Minn. Const. art. IV, § 10 ; Tenney , 341 U.S. at 376, 71 S. Ct. at 788. And we conclude that the phrase "any act done in pursuance of legislative duties" found in the statute applies to the same scope of activity: that which is within the sphere of legitimate legislative activity.
Our conclusion is bolstered by dictionary definitions. An act is "[s]omething done or performed, [especially] voluntarily." Black's Law Dictionary 29 (10th ed. 2014) (defining "act"). And the phrase "in pursuance of" is generally understood to mean "(1) in accordance with; (2) under; (3) as authorized by; or (4) in carrying out." Bryan A. Garner, Garner's Dictionary of Legal Usage 737 (3d ed. 2011) (defining "pursuant to"). When adopting these definitions, the phrase "any act done in pursuance of legislative duties" can be understood to mean "something done to carry out legislative duties." And a duty is "that which one is required to do or refrain from doing, [especially] as occupant of some position, role, or office." Id. at 624 (emphasis added) (defining "obligation; duty"). Accordingly, it is clear from the plain language that immunity under the statute applies only to legislative acts. And because the central question in determining whether a legislator is entitled to immunity under the speech or debate clause is whether the activity is within the sphere of legitimate legislative activity, we conclude that the scope of activity protected under Minnesota Statutes section 540.13 is identical to activities protected by the speech or debate clause in the Minnesota Constitution.
Speech or Debate Clause
Because we conclude that the scope of protected activity under Minnesota Statutes section 540.13 is identical to activities protected under the speech or debate clause, we turn to the central question to determine if Lesch is entitled to immunity under the speech or debate clause: does his letter to the mayor fall within the sphere of legitimate legislative activity?
The Minnesota Supreme Court has described the speech or debate clause as granting absolute immunity from defamation *838 liability to legislators for acts that are within their official duties. Cruz-Guzman , 916 N.W.2d at 13 ; Zutz v. Nelson , 788 N.W.2d 58, 62 (Minn. 2010). But Minnesota caselaw does not answer the question of what constitutes an official act warranting immunity. Accordingly, in order to determine what constitutes a legislative act within the sphere of legitimate legislative activity, we turn to cases interpreting the federal speech or debate clause. In those cases, the Supreme Court emphasized that because "[l]egislative acts are not all-encompassing," any matters other than speech or debate in the legislature "must be an integral part of the deliberative and communicative processes" in which members of the legislature participate in order to warrant immunity under the speech or debate clause. Gravel , 408 U.S. at 625, 92 S. Ct. at 2627. And extending immunity under the speech or debate clause to matters other than speech or debate on the floor of the legislature must only be done when "necessary to prevent indirect impairment of such deliberations." Id. (quotation omitted). Ultimately, "[w]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." Bogan v. Scott-Harris , 523 U.S. 44, 54, 118 S. Ct. 966, 973, 140 L.Ed.2d 79 (1998).
Here, we must analyze Lesch's letter written to the mayor of St. Paul to determine if it falls within the sphere of legitimate legislative activity. In order to do so, we examine the letter as a whole.[2] The letter-written on Lesch's official letterhead and single-spaced-is approximately three pages long. Lesch, in roughly two paragraphs amounting to half of one page, began the letter by congratulating the mayor on a well organized and well orchestrated inaugural ceremony and expressed his interest in beginning a conversation with the mayor regarding lobbying efforts and the upcoming legislative session. But Lesch's letter then shifted focus to two areas of concern to which he wished to draw the mayor's attention. One such issue, which Lesch discussed for one paragraph, was the mayor's hiring practices and concerns over data disclosure with hiring committees. Lesch, describing himself "as a de facto lead on data practices in the legislature," offered his assistance to the mayor in that area.
Lesch then turned to his second area of concern-the St. Paul City Attorney's Office-which he discussed for the remainder of the letter. Lesch noted that he served in that office for almost 15 years and has "a great love for the office." Lesch expressed his surprise in reading that the mayor appointed Olson as St. Paul City Attorney and explained that had he known Olson was being considered for the position, he "would have registered grave concerns over her fit for the office." Then, in two paragraphs, Lesch outlined his concerns with Olson, including his assertion that his "own experience with Ms. Olson in the Minnesota National Guard revealed her to be a prosecutor who would sacrifice justice in pursuit of a political win-even going so far as to commit misconduct to do so." Lesch further alleged that the Minnesota National Guard investigated Olson for running a "toxic working environment" and that, in his experience, Olson "use[d] her office to wage a political fight." Lesch noted his "great concern" over "an in-coming City Attorney with a preexisting track record *839 of integrity questions and management problems" and expressed his vested interest in the success of the St. Paul City Attorney's Office.
In concluding his letter, Lesch recounted his experience with the St. Paul City Attorney's Office in the aftermath of a high-profile police shooting case and the resulting protests in order to "highlight the importance of a seasoned manager, with a track record of good judgment." Lesch then requested certain documents related to Olson's hiring and any history of disciplinary action taken against her by the Minnesota National Guard. In the closing paragraph, Lesch commented that "this is a personal letter from me to you" and expressed that he was looking forward to working with the mayor during the legislative session.
Our careful examination of Lesch's letter in its entirety leads us to conclude-as the district court aptly determined-that it does not constitute a legislative act within the sphere of legitimate legislative activity. Nothing in the record suggests (and Lesch does not argue) that at the time he sent the letter to the mayor, any business was pending before the legislature pertaining to the mayor, St. Paul in general, or the appointment of Olson as the St. Paul City Attorney. Rather, we view Lesch's letter as more analogous to common activities commonly performed by legislators that are personal or political in nature rather than legislative. United States v. Brewster , 408 U.S. 501, 512, 92 S. Ct. 2531, 2537, 33 L.Ed.2d 507 (1972) (legislative immunity not simply for the personal benefit of legislators). And personal or political acts-like "the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called 'news letters' to constituents, news releases, and speeches delivered outside the Congress"-are not afforded protection under the speech or debate clause. Id.
In a similar case, a United States senator issued press releases and newsletters containing statements he made in a speech identifying what he believed to be a particularly egregious example of wasteful government spending.[3] Hutchinson , 443 U.S. at 116-17, 99 S. Ct. at 2678-79. The researcher involved in the study identified as receiving funds from the wasteful spending then filed suit against the senator. Id. at 118, 99 S. Ct. at 2679. The senator asserted immunity under the speech or debate clause. Id. But the Supreme Court noted that while a speech given by the senator in the legislature-and available to the public through the congressional record-asserting the same allegations would be wholly protected, neither the press releases nor newsletters were "essential to the deliberations of the Senate and neither was part of the deliberative process." Id. at 130, 99 S. Ct. at 2686. As the Supreme Court wrote:
Newsletters and press releases, by contrast, are primarily means of informing those outside the legislative forum; they represent the views and will of a single Member. It does not disparage either their value or their importance to hold that they are not entitled to the protection of the Speech or Debate Clause.
Id. at 133, 99 S. Ct. at 2687. Accordingly, the senator was not entitled to immunity under the speech or debate clause.
In a similar vein here, had Lesch read his letter aloud on the floor of the legislature, his comments would be wholly protected by the speech or debate clause. But *840 he did not. He instead chose to raise his concerns in a letter to the mayor. And as in Hutchinson , nothing in our record indicates that the letter was essential to deliberations occurring in the legislature or part of the deliberative process. Id. at 130, 99 S. Ct. at 2686. Accordingly, Lesch's letter is not a legislative act for which he is entitled to immunity. See also Doe , 412 U.S. at 314-15, 93 S. Ct. at 2025-26 (concluding that republishing libel by reading an official committee report during a speech was not an essential part of the legislative process and not entitled to immunity).
Our conclusion is bolstered by caselaw stating that attempts to influence the executive branch are not protected legislative activity. As the Supreme Court wrote:
That Senators generally perform certain acts in their official capacity as Senators does not necessarily make all such acts legislative in nature. Members of Congress are constantly in touch with the Executive Branch of the Government and with administrative agencies-they may cajole, and exhort with respect to the administration of a federal statute-but such conduct, though generally done, is not protected legislative activity.
Gravel , 408 U.S. at 625, 92 S. Ct. at 2627 (emphasis added). Lesch's letter to the mayor of St. Paul also falls within this category. And although communicating with members of an executive branch-like the mayor of St. Paul-may be an activity often performed by legislators, it does not fall within the scope of protected legislative activity.[4]
Still, Lesch contends that several factors weigh in favor of classifying his letter as a legislative act. First, Lesch notes that his letter was written on official letterhead. But this fact alone, without regard for the substance of the communication, is not sufficient to warrant classification of Lesch's letter as a legislative act. Second, Lesch argues that his intent in writing the letter was to seek information that would help him work with the city of St. Paul. But Lesch's intent in writing the letter is irrelevant to determining whether he is entitled to legislative immunity. See Leapheart v. Williamson , 705 F.3d 310, 313-14 (8th Cir. 2013) (stating that "[a] legislator's potential or alleged motives are wholly irrelevant to [the] determination of whether [a legislator is] entitled to legislative immunity" (quotation omitted)). And although Lesch appeared to assert at oral argument that his conduct was analogous to conducting a legislative investigation into hiring practices, we conclude that the record before us does not provide support for this contention.[5] And we are not persuaded by Lesch's argument that the letter dealt with ensuring compliance with the Minnesota Data Practices Act. Lesch's letter focused primarily on Olson's appointment and did not ask about or refer to other candidates for the position. Nor did it seek a description of how the hiring process was conducted.
Finally, we note that Lesch raises policy considerations that should inform our decision. Lesch notes that depriving lawmakers of immunity could create "a chilling effect," deterring lawmakers from engaging in dialogue important to their jobs and *841 resulting in less-effective governance. Lesch also contends that lawmakers will fear lawsuits and costs associated with litigation and that vindictive lawsuits could become more prevalent. But our conclusion that Lesch's letter is not a legislative act does not change or dilute the immunity offered to legislators performing their official duties; it merely confirms in Minnesota established federal law: that immunity only applies to official legislative acts.
DECISION
In sum, as the Supreme Court stated, "[t]he immunities of the Speech or Debate Clause were not written into the Constitution simply for the personal or private benefit of Members of Congress, but to protect the integrity of the legislative process by insuring the independence of individual legislators." Brewster , 408 U.S. at 507, 92 S. Ct. at 2535. Here, Lesch's letter was not essential to the legislative process. Rather, taken as a whole, it conveys his observations of Olson and the city attorney's office where Lesch served for 15 years. As Lesch wrote in concluding his letter, it was personal. Accordingly, because Lesch's letter was not a legislative act within the sphere of legitimate legislative activity, we conclude that he is not entitled to immunity under either Minnesota Statutes section 540.13 or the speech or debate clause of the Minnesota Constitution.
Affirmed.

Although the denial of a motion to dismiss is generally not immediately appealable, immediate appellate review is available when an order denies a motion to dismiss on the question of government immunity. Cruz-Guzman v. State , 916 N.W.2d 1, 7 (Minn. 2018).

Lesch argues that we should consider the letter as a whole, while Olson urges us to examine the letter in separate portions, citing Doe , 412 U.S. at 314-15, 93 S. Ct. at 2025-26 (examining portions of a report when determining if legislative immunity applied). We note that although our analysis examines the letter as a whole, we do not conclude that doing so is necessary. But even considering the letter as a whole rather than in part, it still does not fall within the sphere of legitimate legislative activity.

Although the press releases and newsletters in Hutchinson were more widely distributed than Lesch's letter, the degree of dissemination is not determinative of what is defined as legitimate legislative activity. And here, the recipient of Lesch's letter was Olson's boss, rather than random members of the public.

We further note that here, Lesch's letter was a communication with a local government executive official rather than with a coequal state executive branch member, making the connection to the legislative process even more attenuated.

We do not decide the issue of whether an individual legislator conducting an investigation is entitled to legislative immunity.